THOMAS GILBERTSON *et al.*, Plaintiffs-Appellants, v. ROLSCREEN COMPANY, Defendant-Appellee.

Second District   No. 2—85—0719

Opinion filed December 8, 1986.

Betsy J. Wolf and Thomas M. Cannon, both of Cooper & Cooper, Ltd., of Libertyville, for appellants.

Barry L. Kroll, James K. Horstman, Alton C. Haynes, and Lloyd E. Williams, Jr., all of Williams & Montgomery, Ltd., of Chicago, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

In this appeal, plaintiff Shirley Gilbertson alleges that defendant, Rolscreen Company (hereinafter Rolscreen), should be held strictly liable in tort for injuries to the plaintiff allegedly caused by the unreasonably dangerous condition of a window manufactured by Pella Doors & Windows, a subsidiary of Rolscreen.

On October 18, 1981, plaintiff, while a patient in the psychiatric ward of Highland Park Hospital in Highland Park jumped out the window of her fourth-floor room. She suffered serious injuries. Plaintiff sued Highland Park Hospital and numerous other parties seeking damages resulting from her fall. All party defendants, with the exception of Rolscreen, reached a settlement with the plaintiffs, and the claims against those defendants were dismissed.

The evidence at trial revealed the following facts. At the time of plaintiff's injury, Highland Park Hospital accepted only voluntary patients. Plaintiff testified that she admitted herself to the psychiatric ward of Highland Park Hospital in September 1981. On October 18, 1981, while in her room on the fourth floor, she kicked open the win-

dow of her room and then pushed it fully open with her hand. She took a pillow, held it in front of her, and jumped out of the window.

Dr. Eugene Trager, plaintiff's psychiatrist, testified that when plaintiff was admitted to the psychiatric ward of Highland Park Hospital, she was diagnosed as having a schizophrenia schizo-affective type of mental disorder. He had talked to plaintiff earlier in the day of October 18, 1981. At that time, she appeared to be getting better and had been less depressed and withdrawn than in the prior several days.

Trager examined plaintiff following her fall. He testified that plaintiff's act of jumping from her window was an attempt to escape the hospital, not a suicide attempt, and that, at that time, she did not comprehend the danger of her act. He did state that he did not know plaintiff's underlying motivation for jumping. However, he also felt that plaintiff could appreciate cause and effect relationships and thought that she knew that if she fell out of the window, she would get hurt.

The psychiatric ward of Highland Park Hospital was constructed in 1977-78. The project architects, Perkins & Will, prepared the specifications for the construction. Based on the architects' drawings, general contractors submitted bids for the contract to build the project. In this case, the bid of Powers Contracting was accepted. Powers Contracting then reached an agreement with Pella Windows & Doors (hereinafter Pella), a wholly owned subsidiary of Rolscreen, to supply the windows for the construction of this psychiatric ward. Pella proceeded to prepare "shop drawings," i.e., drawings of the design they proposed to supply for the project, and sent them to Perkins & Will. Perkins & Will approved the design and sent the drawings to the general contractor, Powers Contracting. Perkins & Will indicated on those drawings that life-safety limiting stops were to be installed. Despite this notation on the drawings, there was no evidence introduced to show that the general contractor communicated this requirement to Pella in its purchase order. In fact, the only limited-opening hardware Pella manufactures is not intended to be used for security purposes.

It is conceded by defendant that it had knowledge that these windows were to be used in a psychiatric ward. Pella manufactures only wooden windows designed for residential or small commercial uses. There was testimony that Pella had sold windows for installation in psychiatric institutions previously and that security was insured not through the window design, but rather by the addition of security screens. Pella neither manufactures nor installs such screens. It is undisputed that the hospital did have security screens installed on the

windows of two of the rooms in the psychiatric ward, though numerous other rooms in the ward did not have them.

Subsequent to the supply and installation of the windows, there is no evidence that Pella was contacted by the architects regarding any lack of life-safety limiting devices, though one of the employees of the architectural firm testified it was his responsibility to determine if the construction was in conformity with the architects' plan and specifications. He stated that from a visual inspection the windows appeared to be in conformity. While no life-safety limiting devices were attached to these Pella windows when installed, both sides agree Highland Park Hospital subsequently acted to alter the windows. The hospital attached metal brackets over the latch mechanism to preclude the opening of the window through release of the latch device. Further, the hospital removed the handle to the crank mechanism of the window to prevent the ordinary means of opening the window.

As mentioned, two rooms in the ward were complete with security screens. A hospital psychiatrist testified those rooms were for violent, actively agitated patients. Plaintiff's psychiatrist, after examining her, chose not to place her in one of those rooms but, rather, based upon her condition, selected a less restrictive environment. It was from that room that plaintiff forced open the window at issue and then jumped.

At the conclusion of the plaintiffs' case in chief, the trial judge granted Rolscreen's motion for a directed verdict on the ground that plaintiff's act of jumping out of the window was the sole proximate cause of her injuries even if all the plaintiffs' allegations regarding Rolscreen's windows being unreasonably dangerous were true.

On appeal plaintiff raises two issues: (1) whether plaintiff's act in jumping out of the window of her room in the psychiatric ward was the sole proximate cause of her injuries as a matter of law, and (2) whether the trial court ruled correctly that standards for windows in psychiatric units being constructed with Federal funding were inadmissible.

■■ ■ In directing a verdict for the defendant on the issue of proximate cause, the trial court was under a duty to consider all of the evidence in the light most favorable to the plaintiff. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494.) The evidence must favor the movant to such a degree that no contrary verdict could possibly be reached. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494.) At issue was whether the failure to provide the life-safety devices to prevent the window from opening more than 15 degrees constituted an unreasonably dangerous condition that existed at the time

it left Pella's control. It is plaintiff's burden to demonstrate this and to show that such unreasonably dangerous condition was the proximate cause of plaintiff's harm. *Dugan v. Sears, Roebuck & Co.* (1983), 113 Ill. App. 3d 740, 744.

Plaintiff's claim in this case is based on the theory that strict liability should be imposed upon the defendant because the window was a defective product. In opposition, the defendant first supports the ruling of the trial court by claiming that the window was *not* a product but an indivisible component part of the hospital structure and, therefore, the theory of strict liability was not applicable. Since it does not affect the result in this case, we will assume *arguendo* that the window here involved was a product for liability purposes in deciding this case.

Even if the window is considered a product, there was no evidence introduced at trial to demonstrate that it is an unreasonably dangerous condition for a window frame to break when kicked. Plaintiff produced a consulting engineer, Mr. Eugene Holland, who testified that Pella "could have used a harder wood, stronger wood, perhaps it [the fall] would have not happened." Such a statement is pure speculation, and it is not evidence to avoid a motion for a directed verdict. Further, this same expert, addressing the absence of a life-safety limiting device on the window, again speculated, "if the window would have had a stopping device so that it could not be opened beyond a certain limit, chances are that this accident may never have occurred." This testimony does not avoid a directed verdict, particularly where plaintiff failed to establish Holland had even minimal knowledge of psychiatric facilities and where there is no showing that the installation of a life-safety limiting device on *this* Pella window would have prevented this accident. There was no evidence, outside of Holland's conjecture, about a "stopping device" to show that a life-safety limiting device properly installed on any other type of window would have withstood plaintiff's blow and prevented plaintiff's injuries. The director of the psychiatric unit of Highland Park Hospital, Dr. Raymond Silverman, testified that the hospital secured the latches on these windows, making the mechanism completely inoperable, to prevent *any opening* of the windows.

██ A product is only considered to be unreasonably dangerous where it fails to perform in the manner reasonably expected given its nature and intended function and where it is shown that the defect in the product has subjected the injured person to an unreasonable risk of harm. (*Sanchez v. Bock Laundry Machine Co.* (1982), 107 Ill. App. 3d 1024, 1028; *Moehle v. Chrysler Motors Corp.* (1981), 100 Ill. App.

3d 353, 358, *aff'd* (1982), 93 Ill. 2d 299.) A manufacturer is under no duty to produce a product incapable of playing a part in any injury. (*Palmer v. Avco Distributing Corp.* (1980), 82 Ill. 2d 211, 217; *Curry v. Louis Allis Co.* (1981), 100 Ill. App. 3d 910, 914.) Irrespective of the limiting device used, the window is still made of wood, to which the device presumably must attach. Holland himself stated the wood sash was seared away when it was kicked.

▮▮▮ Even if we were to accept the plaintiff's argument that Pella's "product" was unreasonably dangerous, we would still be compelled to find for the defendants here, for the defendants have not been shown to be the legal cause of plaintiff's injury. While proximate cause is ordinarily a question of fact, where there can be no difference in the inferences to be drawn by reasonable men, it becomes a question of law. (*Holbrook v. Peric* (1984), 129 Ill. App. 3d 996, 1000.) Plaintiff properly points out that an unreasonably dangerous condition is not the proximate cause of injury, even if it is the cause in fact, if it only serves to provide a condition making the injury possible. (See *Barr v. Rivinius, Inc.* (1978), 58 Ill. App. 3d 121, 127.) Here, there is no evidence that Pella had knowledge that it was to design and provide a window for secure purposes for a psychiatric ward. Although Rolscreen did have knowledge these windows were to be used in a psychiatric ward, they supplied the precise window requested by the general contractor. Neither the architects nor the general contractor was shown to have communicated any need for a special security window to Pella. The general contractor and architects accepted a wooden window. Pella made windows for the ordinary use and purpose for which they would be used. Under the foregoing circumstances, Pella had no duty to furnish windows with extraordinary security devices installed therein. Proximate cause will be established only in situations where the product is used for its intended purpose or for one reasonably foreseeable to the manufacturer. (*Anderson v. Hyster Co.* (1979), 74 Ill. 2d 364, 369; *Nelson v. Hydraulic Press Manufacturing Co.* (1980), 84 Ill. App. 3d 41, 45.) To establish proximate cause, a plaintiff must prove that the alleged defect in the product was an actual effective cause of the injuries rather than a mere condition. *Merlo v. Public Service Co.* (1942), 381 Ill. 300; *Falkenbury v. Elder Cadillac, Inc.* (1982), 109 Ill. App. 3d 11, 17-18; *Schierer v. Ameritex Division, United Merchants & Manufacturers, Inc.* (1980), 81 Ill. App. 3d 90, 93.

▮▮ The plaintiff has failed to establish that Pella had a duty to install extraordinary security devices on the windows in question. We find that plaintiff has failed to show that an unreasonably dangerous

condition existed at the time of manufacture of this window and that such condition was the proximate cause of plaintiff's injuries. We sustain the order of the trial court.

The plaintiff also challenges the trial court's ruling that certain Federal construction standards were inadmissible.

■ The evidence indicates that the Federal regulations proposed to be introduced were minimum requirements for constructing and equipping projects for which Federal assistance is requested under the Act (National Health Planning and Resources Development Act of 1974). There was no support in the record to show any Federal assistance with this project. Defendant also points out, without contradiction by the plaintiffs, that the minimum standards in the Act clearly appear to have been met by Rolscreen. Accordingly, such standards are irrelevant to the issue before this court.

We find that the defendant had no duty to supply windows different than those requested and examined by the architects, the general contractor of this project, and by the hospital. Further, there was no evidence concerning the possible effect of a life-safety limiting device in preventing this accident. Therefore, the decision of the circuit court of Lake County is affirmed.

Affirmed.

NASH, P.J., and REINHARD, J., concur.