STANLEY SOKOLOWSKI, Plaintiff-Appellee, v. ALL POINTS DISTRIBU-
TION SERVICE, INC., *et al.*, Defendants-Appellants.

First District (6th Division)   No. 1—91—3912

Opinion filed March 12, 1993.

John D. Daniels, of Sanchez & Daniels, of Chicago, for appellants.

Robert A. Rosin & Associates, Ltd., of Chicago (Robert A. Rosin, of counsel), for appellee.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Stanley Sokolowski, filed a personal injury action against defendants All Points Distribution Service, Inc., and Continental Can Co., Inc., after sustaining an injury to his back and hip. Following a jury trial, judgment was entered against Continental in the amount of $2 million for damages sustained as a proximate result of the occurrence; however, plaintiff's award was reduced by 75% for negligence attributable to him. (After the jury found that plaintiff was a loaned employee of All Points at the time of the accident, a directed verdict was entered in favor of All Points and against plaintiff. That ruling is not on appeal.) Continental appeals, contending that the trial court erred in denying its motions for a directed verdict and judgment notwithstanding the verdict (judgment *n.o.v.*) because there was insufficient proof of proximate cause to support submitting the case to the jury.

On January 30, 1986, plaintiff, age 32, worked for Transportation Personnel Services, Inc., as a leased employee to All Points. Plaintiff was operating a semi-tractor and trailer owned by Continental, and was ordered to pick up a cargo shipment designated as a "hot load," which is considered a priority shipment. He picked up the semitrailer, which was loaded with nine skids of sheet steel, in

St. Louis, Missouri. Five skids were placed inside the nose of the trailer, and four skids were loaded toward the rear of the trailer. The semitrailer was loaded by employees of Continental. As he observed Continental's employees load the vehicle, plaintiff inquired as to the weight of the skids. According to plaintiff, the skids appeared larger than those he customarily hauled. Prior to signing the bill of lading, plaintiff again questioned an employee loading the truck about the weights. He assured plaintiff that he knew what he was doing. Plaintiff then telephoned Bob Culp, a dispatcher for All Points. Plaintiff informed Culp that the skids looked larger than usual and that the weights did not appear correct. After Culp assured plaintiff that the weight distribution was normal, plaintiff proceeded to Indiana.

While en route to his destination plaintiff passed through a weigh station in Illinois and was cited for being overweight on the rear axles. He called an All Points dispatcher, Dave Fredricks, who became angry at plaintiff for being ticketed as overweight. Plaintiff told Fredricks that there was no way he could take the weight off the rear axle without moving the skids forward. Plaintiff understood his obligation to be to "make the load right." Fredricks did not offer to send a tow truck, nor did he allow plaintiff the opportunity to explain anything to him before hanging up the telephone. Plaintiff testified that State law prohibited him from moving the vehicle and leaving the weigh station until the load distribution was corrected.

Continental provided a 4½-foot steel pry bar in the rear of the truck to be used as a lever. Although plaintiff had never previously used a pry bar to shift a load, he had seen other drivers do so on numerous occasions. Plaintiff believed that he would lose his job or that he would be reprimanded if the company incurred the expense of a tow truck. Utilizing the pry bar, plaintiff attempted to move the skids inch by inch to redistribute the weight. Plaintiff succeeded in moving the corner of the skid approximately one foot before sustaining serious injuries to his back and hip. He then went inside the scale house, called the dispatcher, and explained that he had hurt himself. The dispatcher called a tow truck; however, it was unable to move the pallet. Finally, a semi-tractor tow truck was called and was able to shift the load and redistribute the weight so that plaintiff could leave the scale. As a result of the injury, plaintiff experienced multiple hospitalizations and four operative procedures, including a hip replacement and three spinal surgeries.

On appeal, Continental contends that the trial court erred in denying its motion for a directed verdict and post-trial motion for judgment *n.o.v.* The correct standard to apply in determining whether a motion for a directed verdict or judgment *n.o.v.* should be granted was developed in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504. The *Pedrick* standard holds that verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Pedrick*, 37 Ill. 2d at 510, 229 N.E.2d at 513.

Continental asserts that an act or omission which merely furnishes a condition which makes an accident possible is not, as a matter of law, a proximate cause of an occurrence which results from the independent intervening acts of another. Continental cites *Quintana v. City of Chicago* (1992), 230 Ill. App. 3d 1032, 596 N.E.2d 128, for the proposition that if the negligence charged does nothing more than furnish a condition by which the injury is made possible and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury where the subsequent act is an intervening efficient cause which breaks the causal connection between the original wrong and the injury, and itself becomes the proximate or immediate cause. See also *Novander v. City of Morris* (1989), 181 Ill. App. 3d 1076, 537 N.E.2d 1146.

In the present case, Continental argues that the injury did not result from the condition presented to the plaintiff and his dispatcher, namely, a very heavy skid of sheet tin which needed to be moved within a trailer. Rather, it asserts that the injuries were a result of the decision of plaintiff or the All Points dispatcher (or both) to attempt to move the load manually. We do not agree.

■ The question of proximate cause is ordinarily one of fact for the jury; however, this rule is subject to the limitation that if on all the evidence reasonable men could come to only one conclusion, the question of proximate cause is to be decided as a matter of law. (*Lane v. City of Harvey* (1988), 178 Ill. App. 3d 270, 275, 533 N.E.2d 75, citing *Vest v. City of Granite City* (1982), 106 Ill. App. 3d 36, 435 N.E.2d 755.) Under Illinois law, a distinction is made between the proximate cause of an injury and a condition which provides an opportunity for the causal agency to act. Where a negligent act or omission does nothing more than furnish a condition which makes an injury possible, but the injury is caused by the sub-

sequent independent act of a third person, the two acts are not concurrent and the condition is not the proximate cause of the injury. (*Storen v. City of Chicago* (1940), 373 Ill. 530, 27 N.E.2d 53.) It is well recognized that proximate cause exists when the injury is the natural and probable result of the negligent act or omission, and is of such a character as an ordinarily prudent person ought to have foreseen it as likely to occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which resulted from his act. *Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 50 N.E.2d 497; *Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 382 N.E.2d 1205.

The record reveals that Continental operated 150 production and warehousing facilities and had its own internal trucking department. Continental exchanged inventory between its various plants in order to complete its ultimate commercial objectives. It was foreseeable that when the employees of Continental loaded plaintiff's truck, the weight distribution in the semitrailer would have to comply with applicable State regulations as it passed through weigh stations. Plaintiff expressed his concern that the skids appeared larger than usual and inquired about the weight of the load to employees of Continental as they loaded the truck. When plaintiff was stopped at the weigh station and received little, if any, direction from the All Points dispatcher, he was placed in a situation where immediate action was required. Continental anticipated that loads would shift and, therefore, equipped the trucks with a 4½-foot pry bar to assist drivers in moving loads.

■ We find that Continental's conduct consisted of more than merely furnishing a condition which made it probable that plaintiff would try to redistribute the weight upon the rear axles. In light of the fact that Continental's employees loaded the semitrailer in a disproportionate manner and provided a pry bar to assist the drivers in remedying these types of situations, and the fact that plaintiff was placed in the precarious position of acting quickly so that he could cure his overweight status and deliver his priority shipment, we find that plaintiff's injuries were foreseeable.

Accordingly, we find that the judge did not err in denying Continental's motions for a directed verdict and judgment *n.o.v.* Sufficient evidence was produced under the standard enunciated in *Pedrick* to support allowing the jury to decide the proximate cause issue. We also note that the jury, after hearing all the evidence, decreased plaintiff's award by 75% for his negligence.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

EGAN and GIANNIS, JJ., concur.