**Michael DERRICO, Plaintiff–Appellant,**

v.

**BUNGEE INTERNATIONAL MANUFACTURING COMPANY, Defendant–Appellee.**

No. 92–1758.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 27, 1993.

Decided March 19, 1993.

Rehearing Denied April 29, 1993.

Stephen M. Thacker, Louis C. Cairo, Daniel Streckert, Goldberg, Weisman & Cairo, David A. Novoselsky, Novoselsky & Associates, Chicago, IL, for plaintiff-appellant.

Byron L. Landau, Storrs W. Downey, Deborah A. Benzing, Landau, Omahana & Kopka, Chicago, IL, for defendant-appellee.

Before COFFEY and EASTERBROOK, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

HARLINGTON WOOD, Jr., Senior Circuit Judge.

Plaintiff appeals summary judgment for Defendant in products liability case. We reverse and remand for further proceedings.

## I.  BACKGROUND

Five years ago Michael Derrico Jr. took an unexpected tumble. At the time of his accident, Derrico was attempting to secure a newly-purchased load of drywall to the bed of his dump truck. Derrico had already stretched a rubber tie-down strap from one side of the truck to the other and was in the process of fastening a second tie-down strap. He had affixed one end of the strap to the truck and was stretching the strap across his load. As he leaned over to hook its end, the strap broke or came unfastened. Derrico ended up on the ground with a shattered elbow.

At the time of his fall, Plaintiff's father, Michael Derrico Sr., was sitting in the cab of the truck. Derrico Sr. was not aware there had been an accident until a passerby knocked on the truck door and mentioned that the son was lying in the parking lot. After helping his injured son to the passenger seat, the father went back to where his son had fallen. Derrico Sr. saw a tie-down strap on the ground, picked it up, and laid it atop the drywall in the back of the truck. He then drove his son to the hospital.

After leaving the hospital, Derrico Sr. went to his son's house. There he unfastened the strap still attached, unloaded the drywall, put the first strap and one he had found at the accident site into the cab, locked the cab, and left. A few days later, Derrico asked his father to retrieve the strap which had caused the accident. Derrico Sr. returned to his son's house and found two straps in the truck's cab; one strap was damaged in that the rubber eyelet designed to hold the hook in place was torn through and the hook was missing. Derrico Sr. assumed this was the one that had caused the accident; he picked it up and took it to his own home. There it remained until his son was released from the hospital. The black rubber tie-down strap that Derrico maintained caused the accident was inscribed with the words "Bungee International Manufacturing."

Nine days prior to Derrico's accident, one of his employees, Ricky Selander, had purchased four Bungee straps from R & J Construction. Selander had noted there were no tie-down straps in Derrico's truck, either in the cab or in the bed. He left the four straps on the truck's front seat, as was his practice, so they would not be lost or damaged. At his deposition, Derrico stated it was possible there were other, older straps on his truck at the time of his accident, in addition to the four that Selander purchased. Derrico testified, however, that he was sure he used one of the new straps at the time of his accident.

## II. PROCEDURE

On September 30, 1988, Derrico, an Illinois resident, filed a complaint against Bungee, a California corporation, in district court based on strict products liability and negligence. The court exercised jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332. In both counts, Derrico alleged the strap was in an unreasonably dangerous and defective condition when it left Bungee's control, and did not provide a sufficient warning regarding the maximum length to which the strap could safely be stretched.

On May 10, 1991, Bungee motioned for summary judgment. Defendant maintained that no witness, including Derrico, could testify which strap was actually used at the time of Derrico's accident. Bungee argued Plaintiff therefore had failed to establish a prima facie case in either cause of action.

The court granted Bungee's motion and entered judgment in its favor on February 4, 1992. Derrico filed a timely notice of appeal; we exercise jurisdiction pursuant to 28 U.S.C. § 1291.

## III. DISCUSSION

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether ... there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In conducting this inquiry, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2519; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ We review de novo the district court's grant of summary judgment. *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 1000 (7th Cir.1992); *Appley v. West*, 929 F.2d 1176, 1179 (7th Cir.1991). In other words, our review is "without deference for the view of the district judge and hence almost as if the motion had been made to us directly." *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 332 (7th Cir.1993). Thus we face the question of whether Derrico's claims warranted a fact-finder's scrutiny or could be decided as a matter of law.

■ Bungee argues Derrico presented no evidence that the strap in question was the one that caused his accident and thus

250

summary judgment is appropriate; Derrico contends he presented adequate proof on this point. Obviously, not every dispute over the facts can foil summary judgment; only ones "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. The dispute over the strap, though, is certainly relevant to the outcome of the suit.

■ To impose strict liability under Illinois law, the "plaintiff must prove that the injury or damage resulted from the condition of the product, that the condition was an unreasonably dangerous one, and that the condition existed at the time the product left the manufacturer's control." *Coney v. J.L.G. Indus., Inc.*, 97 Ill.2d 104, 73 Ill.Dec. 337, 340, 454 N.E.2d 197, 200 (1983); *see also Parker v. Freightliner Corp.*, 940 F.2d 1019, 1026 (7th Cir.1991) (summarizing Illinois products liability law). "While these elements may be proved inferentially by either direct or circumstantial evidence, it is clear that preservation of the allegedly defective product, if possible, is of the utmost importance in both proving and defending against a strict liability action." *Ralston v. Casanova*, 129 Ill.App.3d 1050, 85 Ill.Dec. 76, 81, 473 N.E.2d 444, 449 (1984).

■ In its opinion and order granting summary judgment, the district court recounted the history of the allegedly defective product and concluded the strap's "chain of custody is far from air-tight." *Derrico v. Bungee Int'l Mfg. Corp.*, No. 88 C 8365, 1992 WL 26855, at *3 (N.D.Ill. Feb. 5, 1992). As the court noted, the fact that Derrico Sr. found a strap on the ground at the spot where his son fell "does not conclusively show that this is the strap at issue." *Id.* It is undisputed, moreover, that Derrico Sr. did not examine the strap before he put it atop the drywall. Nor did the father compare the strap he found on the ground with the strap that was still attached to the drywall before he put these two straps in the truck's cab. When the father went to retrieve the strap that caused the accident, he chose the one strap that was broken.

This chain of events led the court to conclude it could not "determine with any certainty that the strap that Derrico Sr. preserved is the offending product." *Id.* This conclusion was buttressed by the fact that Michael Derrico's testimony "about what actually happened when he was stretching the strap is vague." *Id.* The court noted that Derrico was unable to say whether the strap that caused the accident had two hooks after the accident. "Consequently, we have no assurance from any camp that the incident occurred because the strap broke. This further undercuts our willingness to assume that the broken strap must be the product at issue." *Id.*

Instead of Plaintiff's tumble being caused by a defective strap, the court hypothesized that a "perfectly plausible explanation for the incident" was that Derrico improperly fastened a strap and it simply "let go" while he tried to attach the other end. *Id.* at *4. In short, the court found that Derrico's "case cannot transcend the realm of speculation" and thus it should not go before a trier of fact. *Id.*

■ We appreciate the view of the district judge as Derrico's case admittedly is not the strongest. Instead of anticipating a lawsuit, Derrico Sr. acted as a father and cared more about helping his son than about preserving evidence. We nonetheless believe summary judgment was inappropriate. Derrico is not required to establish an "airtight" chain of custody nor must he "conclusively" show that the strap he seeks to introduce "must be the strap" that caused the accident. In responding to Bungee's motion for summary judgment, Derrico needed only to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). This he did.

In his memorandum opposing Bungee's summary judgment motion, Plaintiff pointed to the depositions of Michael Derrico, his father, and his employee, Ricky Selander, plus two invoices. The invoices show that R & J Construction purchased its stock of tie-down straps from Bungee In-

ternational Manufacturing Company, and that Selander purchased four Bungee straps from R & J. Selander testified that R & J was the only supply store his employer used; he further stated that there were no other straps on Derrico's truck at the time of his purchase. Michael Derrico testified he used only the new straps to secure the drywall load on the day of his accident. Minutes after Derrico's accident, his father went to his aid and found a new Bungee cord where his son had fallen. Derrico Sr. preserved that cord and the other one his son used that day, and one of those now forms the basis of this lawsuit.

Based on our de novo review of the record, and drawing all justifiable inferences in Derrico's favor, we believe there is a genuine issue as to the whether the strap Plaintiff seeks to introduce into evidence is the strap which caused his accident. Having reached this conclusion, it is unnecessary to discuss Derrico's alternate argument that under Illinois law his case against Bungee could be proven in the absence of the actual product.

## IV. CONCLUSION

For the foregoing reasons, we reverse the district court's grant of summary judgment and remand for proceedings consistent with this opinion.

REVERSED.