Betty **RODRIGUEZ**, individually and as Administrator of the Estate of Jose Rodriguez, deceased, and as Mother and Next Friend of Julian Ramon Rodriguez, a minor, Plaintiff,

v.

**GLOCK, INC., and Glock Ges. m.b.H., Defendants.**

No. 96 C 3981.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 8, 1998.

---

Marvin A. Brustin, Attorney at Law, Chicago, IL, for Plaintiffs.

Thomas M. Crisham, Daniel L. Stanner, Quinlan & Crisham, P.C., Chicago, IL, for Defendants.

### ORDER and OPINION

NORGLE, District Judge.

Before the court is a joint Motion for Summary Judgment by Defendants Glock, Inc. and Glock Ges. m.b.H. (collectively "Glock"). For the following reasons, the court enters summary judgment in favor of Glock.

### I. BACKGROUND [1]

Plaintiff Betty Rodriguez ("Plaintiff") filed the present action against Glock after her

---

1. The following facts are taken from the court's reconciliation of the parties' Local Rule 12(M) and 12(N) statements. As provided by the rule, the court will not accept statements of fact not supported by evidence and statements not denied using evidence are deemed admitted. The court notes that Glock moves to strike Plaintiff's opposition memoranda and 12(N) statement to the extent that the documents rely upon testimony in a related criminal trial. (*See* doc. no. 39.) The court finds, however, that even accepting the testimony from the related criminal trial, Glock

husband, Jose Rodriguez ("Rodriguez"), received a fatal gunshot wound during a struggle on May 27, 1994, outside the Dynasty Club in Chicago. Rodriguez was working as a bouncer for the club when he was involved in an argument with Gabriel Bedoya, an off-duty Milwaukee Police Officer. The struggle occurred around 2:00 a.m. when Bedoya was leaving the establishment. According to the testimony Plaintiff submits, including Bedoya's testimony from his criminal trial, Rodriguez grabbed Bedoya from behind, held his arm and attempted to remove Bedoya's service revolver, a .40 caliber Glock Model 22 semi-automatic pistol, from its holster. Rodriguez succeeded, and he and Bedoya struggled for control of the weapon. While a third person tried to pull Rodriguez away during the struggle, the weapon discharged one round, fatally wounding Rodriguez.

Bedoya was then charged with first-degree murder. At trial, Bedoya testified that he did not pull the trigger and was attempting to regain control of his firearm, which he claimed Rodriguez was trying to aim at him. Bedoya was convicted and sentenced to 30 years in prison. Due to the erroneous exclusion of evidence, the Illinois Appellate Court reversed the conviction and remanded for a new trial. *See People v. Bedoya,* 288 Ill. App.3d 226, 224 Ill.Dec. 37, 681 N.E.2d 19 (Ill.App.Ct.1997).

## II. PROCEDURAL HISTORY

■ While the criminal action was pending, Plaintiff filed suit against Glock in the Circuit Court of Cook County. Glock successfully removed the action to this court based on diversity of citizenship. The Glock defendants are foreign corporations; Glock Ges. m.b.H. is an Austrian corporation with its principal place of business in Austria, and Glock Inc. is a Georgia corporation with its principal place of business in Georgia. Plaintiff is a citizen of Illinois and seeks damages in excess of $50,000. Because Plaintiff filed her amended complaint before the jurisdictional limitation was changed to $75,000, this court has diversity jurisdiction. *See* 28

U.S.C. § 1332(a)(1)–(2); *Gardynski–Leschuck v. Ford Motor Co.,* 142 F.3d 955, 956 (7th Cir .1998).

In her amended complaint, Plaintiff seeks recovery under theories of strict liability and negligence, alleging that the weapon was unsafe and defective when it left Glock's control. She claims that the weapon was improperly and carelessly designed because it did not have an external safety and because it had an extremely short trigger pull of a half-an-inch. (Amend.Compl., ¶s 9 at pp. 2,5, 7–8, 10.)

Glock now moves for summary judgment, arguing that because Bedoya has asserted his fifth amendment privilege against self-incrimination and will not testify, Plaintiff cannot establish that the injury was proximately caused by the alleged defect in the weapon. Plaintiff asserts that a stay of proceedings is appropriate until the criminal trial concludes. Glock, in turn, contends that a stay is not warranted under these circumstances. Glock's argument carries some weight because Bedoya is not a party to this action and a stay does not appear essential to advance the interests of justice. *See SEC v. Dresser Indus., Inc.,* 628 F.2d 1368, 1375 (D.C.Cir.1980) (the court may decide in its discretion to stay civil proceedings in the interests of justice such as when a party under indictment is also a party to a related civil or administrative action). In any event, the court concludes that the issue of foreseeability as it relates to proximate cause (*i.e.,* is this incident something the manufacturer should have reasonably anticipated) is dispositive. Accordingly, the court will address the foreseeability issue below.

## III. STANDARD OF REVIEW

■ In diversity actions, federal courts apply federal procedural rules and state substantive law. *See Bourke v. Dun & Bradstreet Corp.,* 159 F.3d 1032, 1033 (7th Cir. 1998) (*citing Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). In this case, the parties do not dispute that Illinois law controls.

is entitled to summary judgment. Accordingly, for purposes of this opinion, the court accepts the testimony offered by Plaintiff from the crimi-

nal trial in *People v. Bedoya,* 288 Ill.App.3d 226, 224 Ill.Dec. 37, 681 N.E.2d 19 (Ill.App.Ct.1997) and denies Glock's motion to strike.

In deciding a motion for summary judgment, the court must turn to the record on file to determine whether there are any triable questions of fact. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ .P. 56(c). "An issue of fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir.1997) (internal quotation marks and citation omitted). The court must "view the record and all reasonable inferences drawn from the record in a light most favorable to the non-moving party." *Sample v. Aldi, Inc.,* 61 F.3d 544, 546 (7th Cir.1995).

It is often said that complicated tort actions do not invite summary judgment because they "generally encompass a multitude of factual issues and abstract concepts that become elusive when applied to varying concrete factual situations...." *Gracyalny v. Westinghouse Elec. Corp.,* 723 F.2d 1311, 1316 (7th Cir.1983) (*quoting Hughes v. American Jawa, Ltd.,* 529 F.2d 21, 23 (8th Cir .1976)). "[Q]uestions concerning the reasonableness of the parties' conduct, foreseeability and proximate cause particularly lend themselves to decision by a jury." *Id.* (*citing TSC Indus, Inc. v. Northway, Inc.,* 426 U.S. 438, 450 n. 12, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976); *Cook v. Baker Equip. Eng'g Co.,* 582 F.2d 862, 865 (4th Cir.1978)). Nevertheless, if the plaintiff fails to present sufficient evidence to warrant a trial, summary judgment is appropriate. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## IV. DISCUSSION

At issue in this case is whether a handgun manufacturer is liable to a third party injured by the discharge of an allegedly defective handgun during a fight with the owner involving the immediate control and possession of the handgun. For the reasons discussed below, the court finds that liability cannot be reasonably placed upon the manufacturer of the weapon based on the circumstances in this case.

### A. Strict Product Liability Claim

To overcome summary judgment in a strict product liability action, Plaintiff must present sufficient evidence demonstrating that: (1) the condition of the product was unreasonably dangerous; (2) the condition existed at the time the product left the manufacturer's control; and (3) the injury resulted from the condition. *See Derrico v. Bungee Int'l Mfg. Co.,* 989 F.2d 247, 250 (7th Cir.1993); *Suvada v. White Motor Co.,* 32 Ill.2d 612, 623, 210 N.E.2d 182, 188 (Ill.1965). Illinois follows the strict liability formula of the Restatement (Second) of Torts § 402A (1965). See *Haddix v. Playtex Family Products Corp.,* 138 F.3d 681, 683 (7th Cir.1998) (*citing Lamkin v. Towner, .*138 Ill.2d 510, 528, 150 Ill.Dec. 562, 563 N.E.2d 449, 457 (Ill.1990)). Consequently, "strict liability is imposed on anyone who sells any product in a defective condition unreasonably dangerous to consumers, users or their property." *Id.* (*citing Martin v. Harrington & Richardson, Inc.,* 743 F.2d 1200, 1202 (7th Cir.1984); Restatement § 402A). However, the Illinois Supreme Court notes,

[a] manufacturer is not under a duty in strict liability to design a product which is totally incapable of injuring those who foreseeably come in contact with the product. Products liability does not make the manufacturer an insurer of all foreseeable accidents which involve its product. Virtually any product is capable of producing injury when put to certain uses or misuses .... Injuries are not compensable in products liability if they derive merely from those inherent properties of a product which are obvious to all who come in contact with the product. The injuries must derive from a distinct defect which subjects those exposed to the product to an [u]nreasonable risk of harm.

*Hunt v. Blasius,* 74 Ill.2d 203, 211–12, 23 Ill.Dec. 574, 384 N.E.2d 368, 371 (Ill.1978) (internal citation omitted).

■ A product is unreasonably dangerous if it "fail[s] to perform in the manner reasonably to be expected in light of [its] nature and intended function." *See Dunham v. Vaughan & Bushnell Mfg. Co.*, 42 Ill.2d 339, 342, 247 N.E.2d 401, 403 (Ill.1969). An injury does not raise an inference that a defect exists. *See West v. Deere & Co.*, 145 Ill.2d 177, 180, 164. Ill.Dec. 122, 582 N.E.2d 685, 686 (Ill.1991); *Schultz v. Hennessy Indus., Inc.*, 222 Ill.App.3d 532, 540, 165 Ill. Dec. 56, 584 N.E.2d 235, 241 (Ill.App.Ct. 1991). It is incumbent upon a plaintiff to demonstrate a particular defect that subjected him to an unreasonable risk of harm, *see Todd v. Societe BIC, S.A.*, 9 F.3d 1216, 1220 (7th Cir.1993), and that the defect caused the injury. *See Derrico*, 989 F.2d at 250; *H & H Sand*, 260 Ill.App.3d at 248, 198 Ill.Dec. 367, 632 N.E.2d at 706. As with negligence cases, the defect must be the proximate cause of the injury. *See Schultz v. Hennessy Indus., Inc.*, 222 Ill.App.3d 532, 540, 165 Ill.Dec. 56, 584 N.E.2d 235, 241 (Ill.App.Ct.1991); *Bouillon v. Harry Gill Co.*, 15 Ill.App.3d 45, 49, 301 N.E.2d 627, 631 (Ill.App.Ct.1973); 2 M. Polelle & B. Ottley, *Illinois Tort Law* § 19.35, at 19–40 (2d ed.1998).

■ To establish that a product has an unreasonably dangerous design as Plaintiff alleges, she must produce evidence that an alternate design was available at the time of manufacture or that the design employed by the manufacturer failed to comply with industry standards. *See Kuziw v. Lake Eng'g Co.*, 586 F.2d 33, 36 (7th Cir .1978). The fact that an alternate design exists, however, does not require the manufacturer to change its design or subject the manufacturer to liability. *See Hunt*, 74 Ill.2d at 212, 23 Ill.Dec. 574, 384 N.E.2d at 372. The alternate design must be "practical, economical and effective in preventing the injury in question...." *J. Wyant v. J.I. Case Co., Inc.*, 633 F.2d 1254, 1257 (7th Cir.1980). "In determining whether a product is unreasonably dangerous, the focus should be placed on the product itself and not on the availability of any additional safety devices." *Fuller v. Fend All Co.*, 70 Ill.App.3d 634, 638, 27 Ill.Dec. 1, 388 N.E.2d 964, 966 (Ill.App.Ct.1979); *see also Miller v. Dvornik*, 149 Ill.App.3d 883, 888, 103 Ill.Dec. 139, 501 N.E.2d 160, 163–64 (Ill.App.Ct.1986).

Plaintiff offers the affidavit of Tim LaFrance, a master weaponsmith, to support her claim that the weapon was unreasonably dangerous. LaFrance opines that the lack of an external safety on the weapon makes it prone to accidental discharges. (LaFrance Aff., ¶ 3.) According to LaFrance, the weapon's only safety is in the trigger and "once a live round is chambered, there is no way to treat the weapon, even momentarily, as a safe weapon for reholstering, handcuffing a prisoner, etc." (*Id.*) Furthermore, LaFrance states that "the extremely short trigger pull of½" and "only passive safeties do not preclude an accidental discharge." (*Id.* ¶ 4.) He suggests that the weapon could have been designed with a "true double action only" feature or a "manual decocking lever on the slide." (*Id.* ¶ 5.)

Because the focus of LaFrance's affidavit is on the lack of a particular safety device, it fails in large part to demonstrate that the weapon is unreasonably dangerous. *See Barrett v. International Armaments, Inc.*, No. 95 C 2690, 1997 WL 639226, at *4 (N.D.Ill. Oct.6,1997) (summary judgment for defendant where plaintiff merely pointed to lack of safety device as evidence that firearm was unreasonably dangerous). *But see LeMaster v. Glock, Inc.*, 610 So.2d 1336, 1338 (Fla.App.Ct.1992) (trial court erroneously ruled that lack of safety was not a defect, and whether the absence of an external safety constituted a design defect rendering weapon unreasonably dangerous was a question of fact precluding summary judgment). Nevertheless, looking to the evidence in a light most favorable to Plaintiff, the court finds that the affidavit could present a triable question of a design defect.

However, whether there is a design defect is of little import in the court's final analysis; of greater concern is the cause of the injury. As stated above, the design defect must be the proximate cause of the injury. In this case, the court concludes that the defect was not the proximate cause of Rodriguez's injury and thus his estate cannot maintain an action based upon a theory of product liability. Before embarking on this analysis, the court turns to Plaintiff's negligence claim.

## B. Negligence Claim

To establish a claim for negligence, Plaintiff must present evidence demonstrating that: (1) the defendant owed a duty of care; (2) the defendant breached that duty; and (3) the breach proximately caused Plaintiff's damages. *See Dundee Cement Co. v. Chemical Labs., Inc.,* 712 F.2d 1166, 1168 (7th Cir.1983). In Illinois, a manufacturer has a nondelegable duty to manufacture products that are reasonably safe. *See Apperson v. E.I. du Pont de Nemours & Co.,* 41 F.3d 1103, 1106 (7th Cir.1994); *Coney v. J.L.G. Indus., Inc.,* 97 Ill.2d 104, 117, 73 Ill.Dec. 337, 454 N.E.2d 197, 203 (Ill.1983). However, this does not mean that the manufacturer must provide the safest design possible or a design incapable of causing injury. *See Navarro v. Fuji Heavy Indus., Ltd.,* 117 F.3d 1027, 1031 (7th Cir.1997); *Kerns v. Engelke,* 76 Ill.2d 154, 166, 28 Ill.Dec. 500, 390 N.E.2d 859, 865 (Ill.1979). When prosecuting such a claim, Plaintiff must submit evidence of a better design and an industry standard by which to measure the reasonableness of the defendant's design. *See Baltus v. Weaver Division of Kidde & Co.,* 199 Ill.App.3d 821, 831, 145 Ill.Dec. 810, 557 N.E.2d 580, 586 (Ill.App.Ct.1990).

Most relevant here, Plaintiff must also establish that the alleged defect was the proximate cause of the injury. The failure to establish proximate cause is fatal to the action. *See Gilbertson v. Rolscreen Co.,* 150 Ill.App.3d 192, 197, 103 Ill.Dec. 637, 501 N.E.2d 954, 957 (Ill.App.Ct.1986). The court concludes that Plaintiff's negligence claim has the same flaw as her product liability claim—she cannot demonstrate that the alleged defect was the proximate cause of Rodriguez's injury. Thus, Plaintiff's negligence claim must fail.

## C. Proximate Cause

The labyrinthian concept of proximate cause is the same in negligence and strict liability in tort. *See Schultz,* 222 Ill. App.3d at 540, 165 Ill.Dec. 56, 584 N.E.2d at 243; *Wehmeier v. UNR Indus., Inc.,* 213 Ill.App.3d 6, 29, 157 Ill.Dec. 251, 572 N.E.2d 320, 335 (Ill.App.Ct.1991); *Lindenmier v. City of Rockford,* 156 Ill.App.3d 76, 85, 108 Ill.Dec. 624, 508 N.E.2d 1201, 1207 (Ill.App. Ct.1987). Put simply, proximate cause involves the causal connection between a defendant's conduct and an injury. 1 Polelle & Ottley, *supra* § 14.23, at 14–27–28.

> An essential element of the plaintiff's cause of action for negligence, or for that matter for any other tort, is that there be some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered ... There is perhaps nothing in the entire field of law which has called forth more disagreement, or upon which the opinions are in such a welter of confusion.

W. Page Keeton *ET. AL., Prosser and Keeton on the Law of Torts* § 41 at 263 (5th ed.1984).

Proximate cause encompasses the concepts of cause in fact and legal cause. *See Kerns v. Engelke,* 54 Ill.App.3d 323, 333, 12 Ill.Dec. 270, 369 N.E.2d 1284, 1292 (Ill. App.Ct.1977), *aff'd in part,* 76 Ill.2d 154, 28 Ill.Dec. 500, 390 N.E.2d 859 (Ill.1979). The first step in analyzing any causation issue is determining whether the defendant's conduct was a cause of the plaintiff's injury (cause in fact). Once it is determined that the defendant's conduct was a cause of the injury, the second step involves determining whether the defendant should be legally responsible (legal cause). *See id.*

### (1) Causation in Fact

Illinois courts generally apply two tests when analyzing causation in fact: the "substantial factor" test and the "but for" rule. Under the "substantial factor" test, the defendant's conduct is said to be a cause of an injury "if it was a material element and a substantial factor in bringing it about." *Id.; see also Tragarz v. Keene Corp.,* 980 F.2d 411, 420 (7th Cir.1992). Under the "but for" rule, "the defendant's conduct is not a cause of an event if the event would have occurred without it." *See Kerns,* 54 Ill.App.3d at 333, 12 Ill.Dec. 270, 369 N.E.2d at 1292. Applying these rules involves the application of nothing more than common sense. Determining "causation in fact is a question 'upon which all the learning, literature and lore of the law are largely lost.' It is a matter upon

which any layman is quite as competent to sit in judgment as the most experienced court." *See id.* (citing W. Prosser, *Law of Torts* at 237 (4th ed.1971)). Consequently, causation in fact is generally a question for the jury as the answer is uniquely within its province. *See id.*

Applying either test, a jury could reasonably conclude that the alleged defect was a cause in fact of the injury. The defect can be characterized as a substantial factor given the fact that the gun discharged without evidence of an intentional pull of the trigger. "But for" the alleged defect, Rodriguez would arguably not have been injured. The chain of events, as alleged by Plaintiff, sufficiently shows causation in fact to present the issue to a jury. Nevertheless, the court must turn to whether Glock should be legally responsible for Rodriguez's death.

*(2) Legal Causation*

■■■■ A defendant is legally responsible for the natural and probable results of his actions. *See Lindenmier,* 156 Ill.App.3d at 89, 108 Ill.Dec. 624, 508 N.E.2d at 1210. Liability is imposed on a defendant for any consequences a reasonably prudent person would have foreseen as likely to occur. *See id.* "The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm." *Holbrook v. Peric,* 129 Ill.App.3d 996, 1000, 85 Ill.Dec. 163, 473 N.E.2d 531, 535 (Ill.App. Ct.1984) (*quoting Mieher v. Brown,* 54 Ill.2d 539, 544, 301 N.E.2d 307, 310 (Ill.1973)). In other words, "[t]he injury which could not have been foreseen or reasonably anticipated as the probable result of an act of negligence is not actionable, and such an act is either a remote cause, or no cause whatever of the injury." *Ney v. Yellow Cab Co.,* 2 Ill.2d 74, 80, 117 N.E.2d 74, 79 (Ill.1954).

■■■■ To be a legal cause of an injury, and thus its proximate cause, the cause must produce the injury through a natural and continuous sequence of events that is unbroken by any effective intervening cause. *See Unger v. Eichleay Corp.,* 244 Ill.App.3d 445, 451, 185 Ill.Dec. 556, 614 N.E.2d 1241, 1245 (Ill.App.Ct.1993); *Kemp v. Sisters of the Third Order of St. Francis,* 143 Ill.App.3d 360, 361, 97 Ill.Dec. 709, 493 N.E.2d 372, 373 (Ill.App.Ct.1986); *Chapman v. Baltimore & Ohio R.R. Co.,* 340 Ill.App. 475, 490, 92 N.E.2d 466, 471 (Ill.App.Ct.1950). As explained by the Illinois Supreme Court,

> if the negligence charged does nothing more than furnish a condition by which the injury is made possible and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury where the subsequent act is an intervening efficient cause which breaks the causal connection between the original wrong and the injury, and itself becomes the proximate or immediate cause. The cause of an injury is that which actually produces it, while the occasion is that which provides an opportunity for the causal agencies to act.

*Merlo v. Public Serv. Co. of Northern Illinois,* 381 Ill. 300, 316–17, 45 N.E.2d 665, 675 (Ill.1942). Accordingly, to establish legal causation, Plaintiff must show that the alleged defect in the weapon was an actual effective cause of the injuries rather than a mere condition. *See id.; Billman v. Frenzel Constr. Co.,* 262 Ill.App.3d 681, 686–87, 200 Ill.Dec. 96, 635 N.E.2d 435, 439 (Ill.App.Ct. 1993); *Sokolowski v. All Points Distribution Serv., Inc.,* 243 Ill.App.3d 539, 542–43, 183 Ill.Dec. 822, 612 N.E.2d 79, 82 (Ill.App.Ct. 1993); *Bogovich v. Nalco Chemical Co.,* 213 Ill.App.3d 439, 443, 157 Ill.Dec. 579, 572 N.E.2d 1043, 1045 (Ill.App.Ct.1991); *Gilbertson,* 150 Ill.App.3d at 197, 103 Ill.Dec. 637, 501 N.E.2d at 958; *Boylan v. Martindale,* 103 Ill.App.3d 335, 341–42, 59 Ill.Dec. 43, 431 N.E.2d 62, 68 (Ill.App.Ct.1982); *Schierer v. Sears, Roebuck & Co.,* 81 Ill.App.3d 90, 93, 36 Ill.Dec. 492, 400 N.E.2d 1072, 1075 (Ill.App. Ct.1980).

■■■■ The intervention of an independent cause, however, does not guarantee that the defendant will be relieved of liability for its negligence. *See Lindenmier,* 156 Ill.App.3d at 90, 108 Ill.Dec. 624, 508 N.E.2d at 1211. If the intervening cause is of a type which could have been reasonably anticipated, the

connection is not disturbed. *See id.; Parvin v. Sill,* 138 Ill.App.3d 325, 328–29, 93 Ill.Dec. 161, 486 N.E.2d 262, 265 (Ill.App.Ct.1985). The causal connection between the defect and the injury is broken only "if the intervening acts or omissions of a third party are improbable or unforeseeable, and, thus, superseding." *Medina v. Air–Mite Devices, Inc.,* 161 Ill.App.3d 502, 507, 113 Ill.Dec. 785, 515 N.E.2d 770, 773 (Ill.App.Ct.1987); *see also* Restatement (Second) of Torts § 447 cmt. g. (1965) ("[T]he negligence of the act may be so great or the third person's conduct so reckless as to make it appear an extraordinary response to the situation created by the actor and therefore a superseding cause of the other's harm.").

■ Although the issue of proximate cause is generally one of fact for the jury, "if on all the evidence reasonable men could come to only one conclusion, the question of proximate cause is to be decided as a matter of law." *Sokolowski,* 243 Ill.App.3d at 542, 183 Ill.Dec. 822, 612 N.E.2d at 82; *see also West,* 145 Ill.2d at 182, 164 Ill.Dec. 122, 582 N.E.2d at 687–88 (Ill.1991) (summary judgment proper where plaintiff produced insufficient evidence to show that allegedly defective or unreasonably dangerous condition in cultivator was a cause of injury); *Cannon v. Commonwealth Edison Co.,* 250 Ill.App.3d 379, 384, 190 Ill.Dec. 183, 621 N.E.2d 52, 56 (Ill.App.Ct.1993) ("The issue of 'cause vs. condition' may be and has been decided as a matter of law,"); *Munizza v. City of Chicago,* 222 Ill.App.3d 50, 57, 164 Ill.Dec. 645, 583 N.E.2d 561, 566–67 (Ill.App.Ct.1991); *Bogovich v. Nalco Chemical Co.,* 213 Ill.App.3d 439, 443–44 572 N.E.2d 1043, 1046 (Ill.App. Ct.1991); *Newsome v. Thompson,* 202 Ill. App.3d 1074, 1081, 148 Ill.Dec. 377, 560 N.E.2d 974, 979 (Ill.App.Ct.1990); *Novander v. City of Morris,* 181 Ill.App.3d 1076, 1078, 130 Ill.Dec. 817, 537 N.E.2d 1146, 1147 (Ill. App.Ct.1989); *Kemp,* 143 Ill.App.3d at 361, 97 Ill.Dec. 709, 493 N.E.2d at 373.

In this case, the court is presented with what it considers the classic "cause vs. condition" case. A brief recap of the facts in a light most favorable to Plaintiff is therefore necessary. On the evening of Rodriguez's death, Bedoya was leaving the tavern. According to Bedoya (who is a crucial witness upon whom Plaintiff relies), Rodriguez took the weapon from his. holster and Bedoya attempted to retrieve it. A struggle ensued over the weapon. Bedoya testified that he was not only trying to retrieve it, but he was also trying to avoid having the weapon aimed at him. During the struggle, a third party attempted unsuccessfully to pull Rodriguez away. At some point during the struggle the weapon fired, fatally wounding Rodriguez. Bedoya claimed the shooting was accidental because he did not have his finger on the trigger.

For purposes of the motion, the court assumes that a defective condition existed; regardless, the court holds that the defect was not the legal cause of Rodriguez's injuries. The facts show that there was a heated struggle between Rodriguez and Bedoya for control of the weapon. Although it is not clear to what extent each intended to harm the other, the potential certainly existed. It is common knowledge that a gun is a dangerous object with the ability to inflict great bodily harm or death. Much like a knife, a chainsaw or a car, a gun is a product which can seriously injure an individual, especially when the product is defective. Yet, the law declines to hold a manufacturer liable for every injury connected with its product. *See Hunt,* 74 Ill.2d at 211–12, 23 Ill.Dec. 574, 384 N.E.2d at 371; *see also Merlo,* 381 Ill. at 316–17, 45 N.E.2d at 675 (if negligence does nothing more than furnish a condition which causes an injury by a subsequent intervening efficient cause, the negligence is merely a condition and not a proximate cause). To do so would make the manufacturer an insurer of its product, a position rejected by the Illinois Supreme Court. *See Winnett v. Winnett,* 57 Ill.2d 7, 11, 310 N.E.2d 1, 3 (Ill.1974) (manufacturer is liable for reasonably foreseeable injuries and does not act as an insurer). At some point, the law relieves the manufacturer that created a condition of its liability when a third party's actions exploit the condition in a manner which the manufacturer could not reasonably foresee. *See id .* at 13, 310 N.E.2d at 5 (manufacturer of farm forage wagon could not reasonably foresee that four-year-old child would be permitted to approach machinery when operat-

ing and place fingers in holes in moving screen). That is the case here.

Common experience dictates that precautions are necessary to use a handgun properly. The recklessness involved in pointing the weapon at another human being under these circumstances, whether it is defective or not, excuses the manufacturer as the struggle was an independent superseding cause. *See Eichstedt v. Lakefield Arms Ltd.,* 849 F.Supp. 1287, 1292 (E.D.Wis.1994) (even if rifle was defective and unreasonably dangerous, intentional reckless actions of individual in aiming and pulling trigger of allegedly unloaded weapon at another person was a superseding cause of gunshot injury); *cf. Martin,* 743 F.2d at 1205 (criminal misuse of handguns not a foreseeable consequence of gun manufacturing). The defect, if any, was merely a condition and could not lead to Glock's liability for Rodriguez's injury. Glock did not point the weapon at Rodriguez or struggle with him over its control, and could not have reasonably anticipated that the weapon would be used in this manner. The struggle on this occasion was so improbable and unforeseeable that it removed any potential liability from Glock for its own alleged negligence in design. Accordingly, the court concludes that the fight in the case was, as a matter of law, an intervening event which cut the causal chain.

## III. CONCLUSION

Therefore, Plaintiff's action based on strict product liability and negligence must fail as a matter of law. For the foregoing reasons, summary judgment is entered in favor of Glock.

IT IS SO ORDERED.