PAULINE BILLMAN *et al.*, as Co-Guardians of the Estate and Person of Thomas Austin McDonald, an Incompetent, Plaintiffs-Appellants, v. FRENZEL CONSTRUCTION COMPANY, Defendant-Appellee.

First District (1st Division)    No. 1—91—3574

Opinion filed December 20, 1993.—Rehearing denied June 1, 1994.—Modified opinion filed June 6, 1994.

Burditt & Radzius, Chartered, of Chicago (William F. Haley, of counsel), for appellants.

Kralovec, Marquard, Doyle & Gibbons, Chartered, of Chicago (Nancy J. Arnold, Michael T. Clarke, and John C. Doyle, of counsel), for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiffs, Pauline Billman and Estel LeRoy Billman, as co-guardians of the estate and person of Thomas Austin McDonald, an incompetent, appeal an order of the circuit court of Cook County granting summary judgment in favor of defendant Frenzel Construction Co. (Frenzel) on count III of plaintiffs' third amended complaint, which alleged that Frenzel had been negligent in the reconstruction and modification of the intersection at Joliet Road and Route 53 in

Romeoville, Illinois (the intersection). For the following reasons, we affirm.

The basic circumstances giving rise to this appeal are largely those recounted in this court's prior decision of *Billman v. Crown-Trygg Corp.* (1990), 205 Ill. App. 3d 916, 563 N.E.2d 903. During 1978 and 1979, Frenzel was a general contractor that performed certain construction work in connection with the widening of the portion of Route 53 leading to the intersection. Route 53 intersects Joliet Road at a 60-degree angle from the north and then runs parallel to the west side of Joliet Road as it continues south. Subsequently, on August 22, 1984, plaintiff McDonald, while stopped in his automobile at a stop line in the northbound left-turn lane at the intersection, was struck by an automobile traveling southbound which had crossed over the median strip. The driver of the southbound car, Timothy Bowler, was allegedly intoxicated. McDonald suffered serious head injuries which rendered him comatose and resulted in his being adjudicated incompetent.

On August 22, 1986, plaintiffs filed suit against a number of defendants, alleging negligence. However, this appeal involves only the claim made against Frenzel. Plaintiffs allege that as a general contractor, Frenzel had a duty to refrain from performing work or participating in a construction project when the specifications of that project would make the intersection dangerous and likely to cause or exacerbate personal injuries. Plaintiffs allege that Frenzel breached this duty by leaving the intersection with the following specific conditions: (1) a median strip on southbound Route 53 that was not high enough to prevent the accident, yet high enough to raise the point of impact and increase the damage caused by impact; (2) a circular green traffic signal that may have confused southbound drivers as to whether they could drive straight through the intersection; (3) a lack of left- and right-turn-only designations for southbound Route 53; (4) the extension of the median strip into the intersection; (5) the channelization of traffic on southbound Route 53 directly at northbound cars legally stopped to turn left onto northbound Route 53; (6) the presence of a private road intersecting from the east, creating confusion as to whether traffic on southbound Route 53 could proceed straight through the intersection; (7) the presence of a "T-intersection" sign facing southbound traffic on Route 53; (8) the failure to place the stop line for northbound traffic at least four feet from the nearest edge of the intersecting highway; (9) inadequate night lighting; and (10) improper placement of improper traffic signal lights.

Frenzel moved for summary judgment, contending that the

intoxicated driving of Timothy Bowler was the sole proximate cause of McDonald's injuries and that Frenzel owed no duty to McDonald because Frenzel's work complied with plans and specifications prepared and approved by the Illinois Department of Transportation (IDOT) and the Federal government.

The parties marshalled evidence in support of their respective positions. On appeal, the parties focus upon evidence taken from Robert Lippman and Lawrence Kory. The record contains the affidavit of Robert Lippman, who indicated that he was a civil engineer and registered land surveyor who had specialized in road building and design since 1952. Lippman indicated that he could testify as to conclusions he drew in a letter to plaintiff's attorney, based on a review of the intersection and other materials upon which experts would rely in determining the circumstances of a road accident. The record contains this letter, which discusses and criticizes the design of the intersection. In the letter, Lippman opines that Frenzel was responsible for the repaving and remarking of the portion of southbound Route 53 northwest of the intersection. Lippman opines that while defects in the design and geometry of the intersection were not apparent when the project was bid, a contractor of Frenzel's experience knew or should have known once the work started that it would not be sufficient to make the intersection reasonably safe and that the proposed work was dangerous and likely to cause injury. Lippman opined that Frenzel should have notified the State of observable defects such as the lack of redundant left- and right-turn markings. Lippman indicated that it was obvious that the median would be inside the intersection and not only foreseeable but inevitable that a driver would strike and travel over the median. Lippman also indicated that his analysis of traffic reports and statistics showed that the frequency of similar accidents decreased after right-turn-only marking signs were added in 1985.

The record also contains the deposition of Lawrence Kory, who was then president of Frenzel. Kory indicated that he had visited the intersection weekly during the period that Frenzel was working on the site. Kory also indicated that he was observing the general progress of the job; Kory was not an engineer and IDOT had an engineer on site to inspect the work. Kory stated that any change in specifications required the approval of the State or governing body. Kory indicated that while most of Frenzel's work involved widening Route 53 from two to four lanes northwest of the intersection, Frenzel did work in the intersection, particularly to tie the new work into existing conditions. Frenzel repaved a northwestern portion of the intersection, did work on drainage, ditch regrading, curb and gutter

work on the northwest side of the intersection and relocated the foundation for a traffic light. Kory further indicated the area in which Frenzel worked on a diagram of the intersection; this diagram appears in the record.

The record further contains the deposition of Timothy Bowler, the driver of the car that struck McDonald's car. Bowler admitted that he was drunk at the time of the accident. Bowler also indicated that he had pleaded guilty to driving while intoxicated in connection with this incident.

Bowler initially indicated that he had been in the right-hand lane of Route 53 as he approached Joliet Road, but then indicated that he was not sure that he was in the right-hand lane. Bowler assumed from the way the accident happened that he must have been making a right turn. Bowler did not remember whether he intended to make a turn. Bowler did not have a recollection of where his car was with reference to the intersection when he attempted to turn at the last minute. Bowler did not remember whether there were traffic signals at the intersection. Bowler did not recall seeing any signs regarding the intersection. Bowler also did not remember where he was coming from at the time of the accident. Bowler did not recall whether he attempted to apply his brakes before his car struck the median strip. Bowler did not recall seeing McDonald's car at any time before impact.

Bowler further stated that he was familiar with the area and travelled through the intersection once every few months prior to the collision. Bowler estimated that he had been through the intersection about 10 times before the collision. Bowler could not recall if he had ever turned right onto southbound Route 53 before the collision.

Following a hearing on the matter, the trial court granted summary judgment in favor of Frenzel on September 10, 1991. The trial court entered an order finding that there was no just reason to delay enforcement or appeal of the summary judgment pursuant to Illinois Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) on September 18, 1991. Plaintiffs timely filed a notice of appeal to this court.

I

Summary judgment is properly granted if the pleadings, depositions, and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (*Alop v. Edgewood Valley Community Association* (1987), 154 Ill. App. 3d 482, 484, 507 N.E.2d 19, 21.) The purpose of summary judgment is to determine whether a triable question of fact exists. (*Seeger v. Canale* (1993), 241 Ill. App.

3d 177, 184, 607 N.E.2d 687, 692.) The plaintiffs allege that Frenzel engaged in negligent conduct and therefore must show that Frenzel owed McDonald a duty to conform to a certain standard of conduct, Frenzel breached that duty and that the breach of duty was the proximate cause of McDonald's injuries. (See *Ferentchak v. Village of Frankfort* (1985), 105 Ill. 2d 474, 480, 475 N.E.2d 822, 825.) The trial court granted summary judgment based on the elements of duty and causation. We address each question in turn.

## II

■ Frenzel claims that plaintiffs failed to show that it owed McDonald a legal duty because it performed work according to the design and approval of IDOT and the Federal government. It is true that an independent contractor generally owes no duty to third persons to judge the plans or specifications it has contracted to follow. (*Hunt v. Blasius* (1978), 74 Ill. 2d 203, 209-10, 384 N.E.2d 368, 371.) However, there is an exception to this rule where the plans are so apparently defective that an ordinary builder of ordinary prudence would be put on notice that the work was dangerous and likely to cause injury. (*Hunt*, 74 Ill. 2d at 209-10, 384 N.E.2d at 371.) Thus, it may be said in a very broad sense that Frenzel owed McDonald a duty. Nevertheless, the scope of that duty and whether that duty was breached may remain at issue.

Frenzel, relying on the above-cited *Ferentchak* opinion, argues that the scope of its duty to McDonald, even if based in tort, remains defined by its contract with IDOT. (See *Ferentchak*, 105 Ill. 2d at 482, 475 N.E.2d at 826.) According to Frenzel, this means its duty is limited to work performed by Frenzel, such as the lack of left- and right-turn-only markings in the area repaved and remarked by Frenzel and the allegedly confusing T-intersection sign alongside the portion of Route 53 widened by Frenzel. Conversely, Frenzel argues that plaintiffs' other allegations, such as those regarding the median on Joliet Road, cannot establish a duty because it did no work in this area of the intersection.

Frenzel's reliance on *Ferentchak* may be misplaced. As plaintiffs note in their reply brief, *Ferentchak* (and the appellate case it relied on to limit the scope of duty) concerns the duty of an engineer for his design. (See *Ferentchak*, 105 Ill. 2d at 481-82, 475 N.E.2d at 826.) It is not clear that the same rule should apply to a contractor governed by the *Hunt* decision.

However, we need not resolve whether *Ferentchak* should apply in this case. Assuming *arguendo* that *Ferentchak* applies, plaintiffs' claims fall within the scope of Frenzel's duty even if that duty is

bounded by the work Frenzel contracted to perform. A review of the diagrams and photographs in the record, some of which are included in Frenzel's brief, suggests that the median on Joliet Road may not have extended into the intersection until southbound Route 53 was widened by curb work performed by Frenzel. It is the widening of southbound Route 53 on the northwest side of the intersection that results in or increases the risk of the "channelization" alleged in the third amended complaint.

In this case, plaintiffs produced the Lippman affidavit, incorporating an earlier Lippman letter in which Lippman expressly indicated that a contractor of Frenzel's experience should have been put on notice that the proposed work was dangerous and likely to cause injury. Frenzel produced the Kory deposition, in which Kory—the president of Frenzel—indicated he was not an engineer and that the State employed an engineer to inspect the work that was performed by Frenzel and its subcontractors. Given this record, it seems that there is a material question of fact as to whether Frenzel breached a duty it owed to McDonald.

Nevertheless, this court may affirm summary judgment for any reason that properly appears in the record, regardless of whether that reason is the reason relied upon by the trial court. (*Coleman v. Windy City Balloon Port, Ltd.* (1987), 160 Ill. App. 3d 408, 418, 513 N.E.2d 506, 513.) Here, the trial court also granted summary judgment to defendant upon the issue of causation. Consequently, we turn to address that issue also.

## III

■ On defendant's motion for summary judgment, a plaintiff is not required to establish his case as he would at trial, but he must present some factual basis that would arguably entitle him to a judgment. (*West v. Deere & Co.* (1991), 145 Ill. 2d 177, 182, 582 N.E.2d 685, 687.) A plaintiff may not survive summary judgment on an issue on which he has the burden of proof by arguing that defendant must negate the plaintiff's case. *Webber v. Armstrong World Industries, Inc.* (1992), 235 Ill. App. 3d 790, 795-96, 601 N.E.2d 286, 290.

Frenzel contends that even if it breached a duty of care owed to McDonald, plaintiffs cannot establish that this negligence was the proximate cause of McDonald's injury because the intersection was a "condition" rather than a "cause" of that injury. Frenzel argues that Bowler's drunken driving is an effective intervening cause that breaks any causal chain between the alleged defects in the intersection and McDonald's injuries. Plaintiffs contend that the adoption of comparative fault in Illinois obviates the need to distinguish "conditions" from "causes."

The distinction between conditions and causes remains viable in Illinois. (See, *e.g.*, *Thompson v. County of Cook* (1993), 154 Ill. 2d 374, 382-84, 609 N.E.2d 290, 294.) Moreover, this court has affirmed summary judgments granted on the ground that negligent driving broke the chain of causation. (*E.g.*, *Quintana v. City of Chicago* (1992), 230 Ill. App. 3d 1032, 1035-36, 596 N.E.2d 128, 131; *Novander v. City of Morris* (1989), 181 Ill. App. 3d 1076, 1079-80, 537 N.E.2d 1146, 1148.) As it is undisputed that Bowler was driving under the influence of alcohol at the time of the collision, the trial court did not err in granting summary judgment.

Plaintiffs note that Frenzel remains liable for foreseeable intervening events. (See *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 385, 356 N.E.2d 93, 100.) Here, plaintiffs have come forward with the Lippman letter that indicates that an accident of the type at issue here was "inevitable," given the (new) geometry of the intersection. Thus, plaintiffs argue that the particular circumstances of this collision do not relieve defendant of liability. See *Thorsen v. City of Chicago* (1979), 74 Ill. App. 3d 98, 109, 392 N.E.2d 716, 724.

Plaintiffs' argument concerns legal causation; however, plaintiffs must offer evidence that Frenzel's alleged negligence was a cause in fact of the collision. (See *Wood v. Village of Grayslake* (1992), 229 Ill. App. 3d 343, 354-56, 593 N.E.2d 132, 140-41.) Plaintiffs may establish a genuine issue of material fact regarding causation with circumstantial evidence when an inference may be reasonably drawn therefrom, but damages cannot be awarded on the basis of conjecture, guess or speculation as to what caused decedent's death. (*E.g.*, *Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813, 817, 416 N.E.2d 328, 331.) Ultimately, the existence of a fact cannot be inferred when a contrary fact could be inferred with equal certainty from the same evidence. See, *e.g.*, *Yedor v. Centre Properties, Inc.* (1988), 173 Ill. App. 3d 132, 143, 527 N.E.2d 414, 421.

If Frenzel's duty to McDonald is based on a lack of or defect in signage along the part of Route 53 widened by Frenzel, then plaintiffs must offer some evidence that Bowler was confused by the signage (or lack thereof). If the duty is based on the widening of Route 53 northwest of the intersection such that Bowler could drive from the right lane, straight through the intersection, over the median and into McDonald's car, plaintiffs must offer some evidence that Bowler was in the right-hand lane and drove straight through the intersection. If Bowler was not misled by the signage or lack thereof, was driving in the left lane and swerved into McDonald's car by making a right turn at the last moment, or came up over the median by turning too widely for the intersection, the collision would not be caused by

Frenzel's work on Route 53, because the same accident could have occurred as the intersection existed before that work.

In this case, Bowler stated in his deposition that he was not sure which lane he was in as he proceeded through the intersection. Bowler stated only that he assumed he had collided with McDonald when he tried to turn at the last minute. Bowler indicated that he did not recall whether there were any traffic signals or signs as he approached the intersection. The record shows that Bowler assumed from the way the accident happened that he must have been making a right turn.

If the case were permitted to proceed to trial, a jury would be left to speculate as to whether Frenzel's work was in fact a substantial factor in the collision. Neither scenario can be inferred with any degree of certainty. As speculation would be required to determine the issue, causation cannot be a triable issue of fact in this case. Thus, the trial court did not err in granting summary judgment to defendant, given the facts and circumstances in this case.

For all of the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed as modified.

BUCKLEY and O'CONNOR, JJ., concur.