**Allen BULTEMA and Doreen Bultema, Plaintiffs,**

v.

**CATERPILLAR, INC., a Delaware corporation, and Tim Bernico, an individual, Defendants.**

**CATERPILLAR, INC., a Delaware corporation, and Tim Bernico, an individual, Third Party Plaintiffs,**

v.

**ILLIANA DISTRIBUTORS, INC., Third Party Defendants.**

No. 95 C 2282.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 10, 1998.

Richard D. Boonstra, Hoogendoorn, Talbot, Davids, Godfrey & Milligan, Chicago, IL, for Allen Bultema and Doreen Bultema.

Raymond J. Kelly, Jr., James L. Curtis, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, David William Porter, Chilton, Yambert & Porter, Chicago, IL, for Caterpillar, Inc.

Robert F. Barta, Hoffman, Burke & Bozick, Chicago, IL, David William Porter, Larry J. Chilton, Chilton, Yambert & Porter, Chicago, IL, Gregory G. Vacala, Rubin, Patton, et al., Chicago, IL, for Illiana Distributors, Inc.

Howard K. Priess, II, Mary Kathleen Cronin, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, for Cozzi Iron & Metal, Inc.

## MEMORANDUM AND ORDER

MORAN, Senior District Judge.

Defendants move for summary judgment. That motion is denied.

On November 24, 1993, plaintiff Allen Bultema (Bultema), driving a "semi" with a flatbed trailer, went to a Caterpillar, Inc. (Caterpillar) facility to pick up a load of steel plate scrap. Caterpillar uses steel plate in its production process, burning out various shapes from steel plates. That leaves steel plate scrap of various shapes and sizes, all with "holes" and possibly some burrs where the production patterns have been burned out. The scrap is piled in irregular stacks and, at some point, it is loaded on a flatbed trailer and hauled away.

When Bultema was at Caterpillar, the steel plate scrap was loaded in the usual fashion. That is, the driver, Bultema, stood to the rear of the flatbed and, with hand signals, assisted a Caterpillar forklift operator to load two stacks. The front stack was loaded first, one-and-a-half to three feet in height, with the driver indicating when the stack was centered and could be lowered. Then the process was repeated for a rear stack, separated from the front stack by a few feet.

After the scrap was loaded Bultema had it weighed and found that it was somewhat over road limits. Accordingly, it was necessary to remove two or more of the plates. Bultema climbed on the rear stack to assist the forklift operator in getting the forks under the top plate on the front stack, a procedure complicated by the fact that the plate had "holes" and therefore did not have a uniform bearing surface. Both Bultema and the forklift operator have testified that just as the operator had the top plate on the forks and was lifting it before removing over the side of the flatbed, Bultema went from the top of the rear stack, where he was, by his own testimony, relatively safe, down to the space between the stacks. Bultema testified he does not recall why he moved. He believes that he either intended to get off the flatbed once the top plate was secured or to get on the front stack to help get a plate off the rear stack. At the same time, the second plate in the front stack, a smaller plate,

became dislodged, possibly because it was somehow entangled with the top plate, possibly because it was held in place only by the top plate, or possibly because one of the forks was beneath a portion of it. Bultema has testified he thought the operator was intending to remove the top two plates. The operator testified that he was seeking only to remove the top plate. The second plate destabilized the top plate, which fell harmlessly from the forks to the side of the flatbed. The second plate slid toward the space between the stacks, pinning Bultema's foot between it and the rear stack.

Plaintiffs claim, among other things, that Caterpillar had a policy of not permitting drivers to remain on their trucks during loading and unloading operations (a policy of which Bultema was unaware but which the forklift operator knew about), precisely because of the possibility of the kind of harm that happened here, and that the failure to enforce that requirement was a proximate cause of the accident. Defendants do not dispute the existence of the policy. They argue, however, that Bultema's presence on the flatbed was a condition only, and that he was safe on the rear stack. The cause of the accident, they contend, was plaintiff's committing "the foolhardy and unforeseeable act of suddenly and unexpectedly jumping from his safe position on the rear stack on the truck to the bed of the flatbed between the piles of scrap when he knew the load was moving." They characterize plaintiff's conduct as not unlike "a pedestrian hopping from the curb into the path of an approaching bus."

The distinction between condition and cause is alive and mostly well in Illinois law, *Thompson v. County of Cook*, 154 Ill.2d 374, 181 Ill.Dec. 922, 609 N.E.2d 290 (1993); *Billman v. Frenzel Construction Co.* 262 Ill. App.3d 681, 200 Ill.Dec. 96, 100, 635 N.E.2d 435, 439 (1993), although the advent of comparative fault may have eased the necessity for absolving the more attenuated wrongdoer, *Unger v. Eichleay Corp.*, 244 Ill.App.3d 445, 185 Ill.Dec. 556, 614 N.E.2d 1241 (1993). It is, after all, but another way of considering the concept of proximate causation. There may be no causation in fact. A driver may see a train in plenty of time, even though no audible warning was sounded, but choose to take a chance on making the crossing. But even causation in fact is not always sufficient to ascribe legal responsibility. If Bultema had been delayed by Caterpillar's negligent loading and therefore entered an intersection fifteen minutes later than he otherwise would have, and it just so happened that another vehicle then ignored a red light and collided with Bultema's truck, the accident can be traced to the delay. But plaintiff would not have a claim against Caterpillar in those circumstances. We can term the delay a condition, or conclude that it did not proximately cause the accident, but in either event we are concluding that the defendant's negligent conduct is so remotely related to the accident that the law will not ascribe liability. It cannot have been reasonably anticipated that an injury resulting from the running of a red light was a natural and probable result of Caterpillar's negligence. *Merlo v. Public Service Co. of Northern Illinois*, 381 Ill. 300, 45 N.E.2d 665 (1942); *Boylan v. Martindale*, 103 Ill.App.3d 335, 59 Ill.Dec. 43, 49, 431 N.E.2d 62, 68 (1982).

Still, proximate cause is ordinarily a question of fact for the jury, and there may be more than one proximate cause of an injury. Where varying inferences are possible, foreseeability is a question for the jury. *Mack v. Ford Motor Co.*, 283 Ill.App.3d 52, 218 Ill.Dec. 465, 469–70, 669 N.E.2d 608, 612–13 (1996). Here, the defendants do not contend that plaintiff's presence on the rear stack was an intervening cause. Indeed, they were aware that at least one other driver had made somewhat of a pest of himself in demanding to be on his truck to oversee loading, and they refused to load until he got off. Here a jury could conclude that the likelihood of a driver being on the flatbed was entirely foreseeable since the forklift operator needed some close-up help in positioning the forks for plate removal— help he did not need for loading. Instead, they rely upon Bultema going down between the stacks as the independent intervening cause.

But was that, as a matter of law, unforeseeable? We think not. A trier of fact could find that Bultema was placed in harm's way by the failure of Caterpillar to enforce its

policy. It could also find it foreseeable that a driver in those circumstances would leave one stack to go to the other when he thought it safe to do so, and that both plaintiff and the operator thought that the top plate had been secured and the stack would not shift. Plaintiff can reasonably contend that he would not have jumped down and that the operator would not have lifted the plate if either of them thought otherwise. A jury could readily determine that Bultema went between the stacks before he realized that the second plate was sliding. Whether or to what extent the plaintiff was negligent in acting as he did is an issue to be determined by the jury.