JUSTICE HUTCHINSON, dissenting: The majority’s decision represents a disturbing disregard for applicable authority, and therefore, for the reasons set forth below, I respectfully dissent. The majority’s opinion accurately provides that when, as here, a civil defendant is alleged to have breached the standard of care to perform a task required by a contractual obligation, the existence of the defendant’s duty will be determined by the terms of the contract, and the scope of the defendant’s tasks to be performed and standard of care will not be expanded beyond those terms. 398 Ill. App. 3d at 542, citing Gilley, 372 Ill. App. 3d at 275. In order to determine whether and to what extent a defendant owed a plaintiff a duty, we must interpret the defendant’s contractual obligations. See 398 Ill. App. 3d at 542. When interpreting a contract, the primary objective is to give effect to the parties’ intent, which is best indicated by the plain and ordinary meaning of the contract’s language. See 398 Ill. App. 3d at 542-43, citing Gallagher, 226 Ill. 2d at 232-33. Pursuant to these well-settled maxims, I agree with the majority’s interpretation of the contract’s provisions to the extent that the only contractual task defendants were obligated to perform with respect to the bridge deck and accompanying median was to provide final structural design plans for replacing the bridge deck. This is evident from the contractual terms’ contrast of the word “improvement,” in article 2, paragraph A, of the attachment to the contract, with the word “replacement,” in article 2, paragraph B, of the attachment to the contract. This contrast shows that the parties agreed that defendants would provide only final plans to replace the Grand Avenue bridge deck, and the plain and ordinary meaning of the word “replace” is to rebuild the bridge deck and accompanying median as they already existed. See 398 Ill. App. 3d at 543, quoting Illinois Central R.R. Co., 387 Ill. at 309. Thus, according to the majority’s interpretation of the contract, the only service defendants were contractually obligated to perform with respect to the bridge deck and median was to provide designs to rebuild the bridge deck and median as they already existed, and pursuant to the authority the majority cites, the scope of that task cannot be extended beyond those terms. Nonetheless, in what appears to be a strained effort to reach a predetermined result, the majority disregards its own interpretation of the contractual tasks to be performed by defendants and holds that defendants also had an obligation to perform the task of redesigning the bridge deck and median to include a Jersey barrier. The majority reaches its contradictory conclusion by relying on the “Standard of Care” provision provided in article 4, paragraph A, of the contract. The provision, in its entirety, provides: “The standard of care applicable to [defendants’] services will be the degree of skill and diligence normally employed by professional engineers or consultants performing the same or similar services. [Defendants] will reperform any services not meeting this standard without additional compensation.” As with the scope of services defendants were required to perform pursuant to the contract, we must also interpret the standard-of-care provision by ascertaining the parties’ intent, which is best indicated by the provision’s plain and ordinary language (Gallagher, 226 Ill. 2d at 232-33). The plain language of this provision expressly limited the standard of care to “[defendants’] services.” In other words, the duty to use the degree of skill and diligence normally employed by a professional engineer was limited to, pursuant to the majority’s interpretation of the task defendants were contractually obligated to perform, designing plans to rebuild the bridge deck and accompanying median as they then existed. I agree that defendants’ task was to provide plans to rebuild the bridge deck and median as they then existed, with the degree of skill and diligence normally employed by a professional engineer, but nowhere does this extend to include a requirement that defendant redesign the bridge deck to include a Jersey barrier. My conclusion that defendants’ standard-of-care obligation did not require them to redesign the bridge deck to include a Jersey barrier is confirmed by the conduct of the parties both before and after the contract was entered into. When the parties entered into the contract they were aware of how the Grand Avenue bridge then existed— including the type and height of the median — and they still did not negotiate to contractually obligate defendants to redesign the bridge deck to include a Jersey barrier. Moreover, after defendants produced designs to replace the bridge deck and median as they then existed, their designs were accepted by WDC, which, as Ramisch acknowledged in his affidavit, had the contractual authority to require defendants to reperform any work that did not meet the standard of care provided for in article 4, paragraph A. Therefore, had WDC believed that constructing a Jersey barrier was necessary to meet the standard of care required of professional engineers, it could have directed defendants to reperform their work; WDC did not do so. The Department also approved the plans. Thus, when the contract was entered into, each party had the understanding that defendants had to provide designs only to rebuild the bridge deck and median as they then existed, with the degree of skill and diligence normally employed by a professional engineer, not redesign the bridge deck with a Jersey barrier. Once the contract was completed, the parties agreed that defendants completed their contractual tasks and satisfied their standard of care, because the record is devoid of any indication that WDC had defendants reperform any services in relation to the replaced bridge deck and median. However, in an illogical perversion of contract interpretation, after acknowledging that the only bridge-deck-related task was to provide a design to replace it, the majority avails itself of the contract’s standard-of-care provision to rewrite defendants’ contract to require an unbargained-for task to redesign the bridge deck to include a Jersey barrier even though the existing bridge deck did not already have one. If the parties wanted to place on defendants a project-specific standard of care requiring them to redesign the bridge deck to include a Jersey barrier in anticipation of increased traffic from the Gurnee Mills mall, then the parties could have added language to the contractual provision to reflect that. See Lee v. Allstate Life Insurance Co., 361 Ill. App. 3d 970, 979 (2005) (stating that a presumption exists against provisions that easily could have been included in a contract but were not). The parties did not draft any such language, despite having every opportunity to do so. Thus, applying the contractual interpretation tools the majority uses with regard to the tasks defendants were expressly required to perform, because the standard-of-care provision was not project-specific and did not require defendants to redesign the bridge deck to include a Jersey barrier, defendants were responsible for providing designs only to rebuild the bridge deck and median as they then existed, under the standard of care applicable to a professional engineer. The legal and practical implications of the majority’s willingness to interpret the standard-of-care contractual provision to impose upon defendants the new unbargained-for task of redesigning the bridge deck to include a Jersey barrier are staggering. First, from a legal standpoint, the majority’s opinion intentionally disregards relevant and binding authority. In Ferentchak, our supreme court held that the degree of skill and care required of an engineer was dependent upon his contractual obligations. Ferentchak, 105 Ill. 2d at 482. Here, as the majority acknowledges, the only task that was required of defendants pursuant to both the scope-of-services and the standard-of-care provisions in the contract was to provide final design plans to replace the bridge deck and median as they then existed, with the degree of skill and diligence normally employed by a professional engineer. Thus, in accord with the Ferentchak court’s holdin'g, defendant contracted with WDC to perform only the task of designing plans to rebuild the bridge deck and median as they then existed, and to perform that task with the degree of skill and diligence normally employed by a professional engineer, which defendants did. Absent a specific contractual commitment to do so, in either the standard-of-care or the scope-of-services provision, defendants were not required to redesign the bridge deck to include a Jersey barrier. See Ferentchak, 105 Ill. 2d at 482-83. The majority’s attempt to distinguish Ferentchak is puzzling. The majority states that it reads that decision as relying on the idea that, because the engineer had no involvement in the foundation levels and lacked adequate information to provide any input, it would have been impossible for the engineer in that case to perform the extra-contractual task of setting foundation levels for individual lots. Thus, according to the majority, “the essence of the holding in Ferentchak [is] that the engineer there had no knowledge about the defective design and no involvement in creating it,” and therefore, had no duty to set foundation levels. (Emphasis added.) 398 Ill. App. 3d at 548. Not surprisingly, by focusing on the “essence” of the Ferentchak decision, the majority overlooks the actual holding in that case. When addressing the question of whether, pursuant to his responsibility as a professional engineer, the engineer had a duty to set foundation levels despite the absence of a contractual obligation to do so, our supreme court unequivocally held that “[t]he degree of skill and care required [of the engineer] is dependent on his contractual obligation.” Ferentchak, 105 Ill. 2d at 482. The Ferentchak court proceeded to note that because the engineer lacked adequate information he was not in a position to set foundation levels, but this circumstance merely confirmed its conclusion that the engineer was not under a duty to set foundation levels absent a specific contractual obligation. In other words, by noting that because the engineer did not have adequate information it would have been unreasonable to place a burden on him to set foundation levels, the Ferentchak court did not restrict its holding to provide that an engineer’s duty is dependent on his contractual obligations only when he lacks adequate information to perform an extra-contractual task. Rather, the Ferentchak court expressly and unequivocally held that an engineer’s duty is dependent only on his contractual obligations, and the engineer’s lack of adequate information to set foundation levels in that case merely supported its finding. The majority also concludes that it does not violate the unequivocal rule put forth in Ferentchak, because defendants’ contract obligated them to employ a professional standard of care in designing the replacement of the bridge deck, and Ramisch’s affidavit stands as evidence that defendants breached that standard by not considering or designing a Jersey median barrier. However, as discussed above, by availing itself of the contract’s standard-of-care provision to modify defendants’ task from providing designs to rebuild the bridge deck and median as they then existed to redesigning the bridge deck to include a Jersey barrier, the majority is imposing a new and unbargained-for task on defendants that was not previously provided in their contract with WDC. In short, the only way to impose on defendants the task to redesign the bridge deck to include a Jersey barrier is to impose an obligation not provided in the contract, which is in direct violation of Ferentchak. The majority does this, and then denies doing so while employing its own perverted version of the law. Further, the majority’s claim that it finds support for its decision in Billman, 262 Ill. App. 3d 681, is also confusing. In Billman, the reviewing court relied on an expert’s affidavit and found that, although a contractor overseeing road work pursuant to an already-made design followed its contractual obligations as expressly described, there was at least a genuine issue of material fact as to whether the defendant breached its duty. Billman, 262 Ill. App. 3d at 683-86. The majority here goes on to state that, although the defendant in Billman was a contractor and our defendants here are engineers, this difference does “nothing to undermine the applicability of Billman’s basic holding to this case.” 398 Ill. App. 3d at 546. While the majority may be indifferent to the distinction between the duty of a general contractor who follows instructions, as in Billman (Billman, 262 Ill. App. 3d 681), and an engineer who creates a design, as here, our supreme court has repeatedly disagreed and found this distinction to be significant. In Hunt v. Blasius, 74 Ill. 2d 203 (1978), our supreme court held that an independent contractor who merely carries out the specifications provided to him does not owe to third parties a duty to pass on the appropriateness of the plans unless those plans were “so obviously dangerous” that no competent contractor would follow them. Hunt, 14 Ill. 2d at 209. Subsequently, in Ferentchak, our supreme court noted the distinction between a contractor who follows specifications and an engineer who creates designs and expressly held that the “ ‘so obviously dangerous’ ” rule adopted in Hunt does not apply to an engineer who creates designs. Ferentchak, 105 Ill. 2d at 479-80, quoting Hunt, 74 Ill. 2d at 209. The supreme court has continued to emphasize this distinction. See Marshall v. Burger King Corp., 222 Ill. 2d 422, 433 (2006) (noting the distinction between Hunt and Ferentchak). Pursuant to the above authority, the irrelevancy of Billman to the current matter is manifest. Billman involved a general contractor who performed construction work in connection with a road intersection, whereas here, defendants were engineers who created a design to rebuild a bridge deck and median as it then existed. Thus, that the court in Billman relied on an expert affidavit to conclude that there was a question of fact as to whether a competent contractor would have known that the designs it followed were dangerous provides no guidance on whether, as I steadfastly maintain, the Ferentchak decision is controlling over the matter currently before us. In sum, the majority’s selective disregard for relevant and binding authority in order to reach what appears to be a predetermined result is disturbing. The issue here is whether and to what extent defendants, as engineers who created a design to rebuild the bridge deck and median as they then existed, owed a duty to plaintiff. This issue was specifically addressed in Ferentchak, which unequivocally held that the scope of an engineer’s duty was defined by the terms of his contract, and here, defendants were contractually obligated to perform only the task of designing the plans to replace the bridge deck and median, not redesigning the bridge deck to include a Jersey barrier. The majority attempts to distinguish this matter from the Ferentchak decision by focusing on the “essence” of that case while ignoring its actual holding, and then relies on Billman without bothering to address the distinction between a contractor who follows plans and an engineer who creates plans, which our supreme court has repeatedly emphasized. I cannot subscribe to such a legally and logically unsound approach. Second, from a practical perspective, the majority’s decision is unworkable and renders the true intent of the contracting parties meaningless. Illinois recognizes the strong presumption against provisions that could have easily been included in a contract but were not. Berryman Transfer & Storage Co. v. New Prime, Inc., 345 Ill. App. 3d 859, 863 (2004). Here, as discussed above, the parties could have added language to the standard-of-care or scope-of-services provision requiring defendants to redesign the bridge deck to include a Jersey barrier in anticipation of the increased traffic flow at the Gurnee Mills mall, and to complete that task with the degree of skill and diligence normally employed by a professional engineer, but they did not do so. Now, almost two decades after the contract was negotiated and executed by the parties, defendants’ contractual obligations have been after-the-fact modified in contravention of our supreme court’s precedent, and in doing so, added a new task — redesigning the bridge deck to include a Jersey barrier — even though nothing in the contract indicates that the parties contemplated, negotiated, or bargained for this task. See Gallagher v. Lenart, 367 Ill. App. 3d 293, 301 (2006) (“a court cannot alter, change or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted or take away something which the parties have included”). The majority’s willingness to modify a defendant’s standard of care, resulting in new and previously unknown services to be performed, will have a chilling effect on contracting parties, as exemplified by the current matter. In January of 1991 defendants and WDC entered into a contract that expressly obligated defendants to perform the specific task of providing plans to rebuild the bridge deck and median as they then existed. Both defendants and WDC were aware of the manner in which the bridge deck existed before the contract was entered into. Defendants performed their contractual task, and WDC did not object to the work, even though pursuant to the contract it had the express authority to require defendants to reperform any work that was not completed within the express standard of care. Defendants’ work was then approved by the Department. Now, nearly two decades later, the majority is modifying provisions of the contract, pursuant to an affidavit that provides merely that a professional engineer would have redesigned the bridge by considering, recommending, and designing a Jersey median barrier despite not being under an express contractual obligation to do so. One could not blame defendants, or any other contracting party for that matter, for being reluctant to enter into future contracts out of a fear that their contractual obligations, duties, and potential liabilities thereunder will be rewritten nearly 20 years later. For these reasons, I dissent. SUPPLEMENTAL OPINION ON DENIAL OF REHEARING In their petition for rehearing, aside from parroting arguments raised by the dissenting justice, defendants repeatedly, and in a way that is contrary to their interests, mischaracterize our opinion. We therefore today supplement our opinion to correct the mischaracterizations. Defendants state that we “found that [they] were required to fully redesign the bridge deck and improve its approaches to include Jersey barriers even though the original deck did not have one and even though the barriers would extend beyond the deck and onto the bridge approaches, outside the scope of the defendants’ work.” Defendants are wrong. As we stated repeatedly, we hold that there is at least a factual question as to whether defendants owed a duty to investigate an improved median barrier. Holding that there is a question of fact as to whether there was a duty to investigate falls short even of holding that there was a duty to investigate, let alone holding that defendants were “required to fully redesign the bridge deck.” The point defendants ignore now and in their original brief is that plaintiff put forth expert evidence that there was such a duty. The validity of that evidence was litigated for over 10 years, resulting in two prior opinions from this court and two from our supreme court concluding that such evidence is admissible. Even after the supreme court’s decisions, defendants point to no effort on their part to rebut plaintiff’s affidavit with their own expert testimony regarding the professional duty contained in the contract. Defendants’ strategy follows the trial court’s ruling. Although the trial court resolved what was presented as a motion for summary judgment, it in substance granted a motion to dismiss, because it expressly stated that its ruling was based on the contract (which was part of the pleadings), and not on the expert evidence produced between the pleading and summary judgment stages. In any event, our review is de novo, and we believe that our holding was and is clearly limited to the conclusion that plaintiff has raised a question of fact as to whether the professional standard of care included a duty to investigate the need for an improved median barrier. We certainly do not purport to resolve the question of fact as to whether there was a duty to investigate, or the further question of what might have been required as a consequence of an investigation should the question of whether there was a duty be answered affirmatively. Thus, defendants’ statement that we have held that defendants must redesign the bridge deck and median (and their argument that they must do so without any additional compensation) is plainly inaccurate and very clearly contrary to defendants’ interests. Why defendants would take what we see as clearly a wrongly expansive view of our holding is beyond us, especially where, if they were held to that view on remand, the only issue remaining for trial would be damages. In another fit of hyperbole, defendants argue that, under our opinion, “if an engineer is asked to design a replacement for a light bulb switch in a building, and he agrees to do this work in accordance with the standard of care for an engineer, the engineer is required to review, analyze, and redesign the entire building.” For the reasons we have just repeated, this suggestion is preposterous. To say it yet again, what we have held is that there is a question of fact as to whether the professional standard of care that was incorporated into the contract at issue included a duty to investigate an improved median barrier. What we have not held, and what we state no opinion regarding, is how that question of fact should be resolved. What we certainly have not held is that all engineers in all situations must “review, analyze, and redesign” the entirety of all projects on which they perform minor work, such as designing a light switch. We have little doubt that a moderately effective lawyer could easily provide overwhelming affidavit and other evidence at the summary judgment stage to counter any such absurd suggestion, invalidate any purported question of fact, and thus render summary judgment appropriate for such a defendant. Because defendants here have chosen not to argue to us that they can rebut plaintiffs affidavit with their own contrary expert affidavits, and also have not explained to us why they so chose, we of course do not know whether they were able to muster any such affidavit. Defendants argue that the degree of care it owed was contingent on its contract and that “the WDC contract only required the defendants to prepare plans to replace the bridge deck and median as they existed with the skill and care normally employed by a professional engineer. The contract did not require the defendants to redesign the bridge deck and approaches.” As we stated throughout our opinion, the measure of “skill and care normally employed by a professional engineer” is a question of fact, and plaintiff has presented evidence that that standard of care required defendants at least to investigate an improved median barrier. Defendants argue that our opinion will have the effect of “rewritting] long completed contracts, regardless of the clear intent of the contracting parties, rendering the parties’ contractual intent meaningless.” However, again, our holding rests on a factual question regarding whether an engineer using the degree of skill and diligence normally employed by professional engineers would have investigated an improved median barrier; the parties chose to include that standard of care in their contract. Defendants argue that our opinion rests on “the unsupported affidavit of an engineer who is not licensed in Illinois.” However, we do not see why the affidavit is “unsupported,” and the issue of whether the affiant needed to be an Illinois-licensed engineer has been decided in plaintiffs favor in this same case after a decade of litigation in the trial, appellate, and supreme courts. To the extent that defendants mean to assert that the affidavit evidence is too weak to carry the day, we remind them of the ubiquitous legal boilerplate regarding genuine questions of fact at the summary judgment stage, and the fact that they did not file any contrary affidavits that they argue, either in their petition for rehearing or in their original brief, rebut plaintiff’s affidavit. Defendants argue that we take “the standard-of-care provision out of context and exp and [ ] the defendants’ duties far beyond the contracting parties’ intent.” However, defendants point to no “context” that should change the meaning of the “professional engineers” standard of care as incorporated in their contract. Defendants argue that our opinion will cause the cost of public works projects to increase “as capable engineers attempt to price the risk associated with undertaking a duty greater than their contractual scope.” As we have said repeatedly now, the source of defendants’ potential duty here comes from the contract, which explicitly included a standard of care that, according to plaintiff’s evidence, may have included a duty at least to investigate an improved median barrier. Finally, defendants accuse us of “disregarding] well-settled and binding authority and the clear intent of the parties to reach an apparently predetermined result.” We are of course aware that the dissenting justice made the same allegation in her dissent. Accusing a court of reaching a predetermined result, i.e., a result determined not on the arguments and evidence set forth to the court but rather on some other basis, is one of the most serious accusations of misconduct that can be leveled against a court. At the risk of stating what should be obvious, whatever the propriety of the dissenting justice’s allegation, litigants do not enjoy the prerogative to criticize the court in this fashion, and for a litigant to direct such an accusation at a court is grossly inappropriate. In fact, the accusation constitutes a blatant violation of Rule 8.2 of the Rules of Professional Conduct, which prohibits attorneys from “mak[ing] a statement the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge.” 134 Ill. 2d R. 8.2. The accusation is also a ground for a finding of contempt. Defense counsel are strongly urged to refrain from such conduct in the future. BURKE, J., concurs.