# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Village of Lombard v. Department of Transportation*, 2013 IL App (2d) 121042

| | |
|---|---|
| Appellate Court Caption | THE VILLAGE OF LOMBARD, Plaintiff-Appellee, v. THE DEPARTMENT OF TRANSPORTATION, Defendant-Appellant (The County of Du Page, Defendant-Appellee). |
| District & No. | Second District<br>Docket No. 2-12-1042 |
| Filed | November 6, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute over who, as between plaintiff village, defendant county or the State of Illinois, had the authority and responsibility of maintaining a roadway running through the village, the trial court properly entered summary judgment for the village based on the evidence showing that the State had jurisdiction in 1971 and the State's inability to show any transfer of responsibility to the village or the county since then. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 10-MR-358; the Hon. Terence M. Sheen, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and John P. Schmidt, Assistant Attorney General, of counsel), for appellant.

James W. Fessler and J. Allen Wall, both of Klein, Thorpe & Jenkins, Ltd., of Chicago, for appellee Village of Lombard.

Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman, Assistant State's Attorney, of counsel), for appellee County of Du Page.

Panel

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.

Presiding Justice Burke and Justice McLaren concurred in the judgment and opinion.

## OPINION

¶ 1 This case involves a dispute among the parties over which of them has jurisdiction (*i.e.*, authority and responsibility) over that portion of Highland Avenue in Lombard running from Roosevelt Road south to 20th Street (the Subject Road). The plaintiff, the Village of Lombard (Village), sued the Illinois Department of Transportation (State or IDOT) and the County of Du Page (County), seeking a declaratory judgment that one of those bodies (and not the Village) had jurisdiction over the Subject Road. The trial court granted summary judgment in favor of the Village and the County, ruling that the evidence showed that the State had jurisdiction over the Subject Road and that there were no questions of material fact. The State appeals, and we affirm.

¶ 2                          BACKGROUND

¶ 3 In 2009, the Village wrote to the County's director of transportation, asserting that the Subject Road was under the jurisdiction of the County and requesting that the County perform needed improvements. The County denied that it had jurisdiction over the Subject Road and suggested that the Village contact the State. The State likewise denied that it had jurisdiction over the Subject Road, contending that the Village had jurisdiction.

¶ 4 In 2010, the Village filed suit in the circuit court of Du Page County against the County and the State. The complaint contained three counts: count I sought a declaratory judgment that either the State or the County had jurisdiction and was responsible for reconstruction; count II sought an injunction directing the State to pay for reconstruction; and count III alternatively sought an injunction directing the County to pay for reconstruction. Count II

was dismissed on the basis of sovereign immunity and is not at issue in this appeal.

¶ 5        In August 2011, both the Village and the County filed motions for summary judgment, asserting that the State had jurisdiction over the Subject Road. Evidence of the following facts was presented in the summary judgment proceedings, and these facts are undisputed except as noted.

¶ 6        Highland Avenue, extending 1.894 miles between Roosevelt Road and Butterfield Road in Lombard, was constructed of portland cement during the 1930s. The thoroughfare was known as State Aid Route 9, and all parties agree that the State had jurisdiction over it at that time.

¶ 7        In 1968, for reasons that do not appear in the record, the State and the Village agreed that jurisdiction over the *southern* half of Highland Avenue, running from 20th Street south to Butterfield Road, would be transferred to the Village. On April 15, 1968, the Village passed an ordinance approving the transfer. The ordinance was signed by the Village president and the director of the Illinois Department of Public Works and Buildings (the predecessor of IDOT). The ordinance did not mention the Subject Road (the northern half of Highland Avenue).

¶ 8        In September 1968, the County issued a contract for the reconstruction and widening of the Subject Road as a portland cement road. The construction was under the supervision and approval of the Illinois Department of Public Works and Buildings. At that time, section 5-404 of the Highway Code (Ill. Rev. Stat. 1967, ch. 121, ¶ 5-404) provided that, upon the State's approval and acceptance of previously authorized construction work on any county highway built of portland cement, the highway would "become part of the State highway system *** and such highway, or section thereof, is thereby removed from the county highway system." Under that provision, the State would maintain the highway.[1]

¶ 9        In 1970, the County and the Village entered into an agreement (1970 Agreement or Agreement) regarding the maintenance of certain roadways in and around the Village. The Agreement stated that the Village would "maintain, or cause to be maintained, the following sections of County Highways, presently under the jurisdiction of the County," and listed three sections of road, including the Subject Road. The County agreed to pay the Village $31,565.04 in 10 annual installments for the maintenance of these sections of road, and to perform certain maintenance and improvements before the Village's maintenance obligations commenced.

¶ 10       In 1971, the State accepted the reconstruction and improvements to the Subject Road (the subject of the 1968 contract). The approval letter stated that "[t]he expense for the maintenance of this improvement shall henceforth be borne 100 percent by the State."

¶ 11       On October 1, 1975, section 4-409 of the Highway Code, which authorized the Department of Public Works and Buildings to enter into written contracts with other highway

---

[1]The State notes that, in 1969, the Highway Code was revised to create a state highway system and a county highway system (Ill. Rev. Stat. 1971, ch. 121, ¶¶ 2-101, 2-102), and former section 5-404 was repealed. The State does not contend that the revisions to the Highway Code in themselves resulted in a transfer of jurisdiction over the Subject Road.

authorities for "the maintenance, administration, engineering or improvement of any highway or any portion thereof," was revised to include the word "jurisdiction." The State interprets this amendment to mean that, after October 1, 1975, an agreement for the performance of services relating to a particular roadway, such as a maintenance agreement, did not automatically transfer jurisdiction over that roadway. See IDOT Bureau of Local Roads and Streets Manual § 5-2.01 (2008 ed., updated Nov. 2012), http://www.dot.state.il.us/blr/manuals/Chapter%2005.pdf (last visited Oct. 9, 2013) (Manual) (submitted as an exhibit in connection with the motions for summary judgment). In addition, the State maintains that, after October 1, 1975, it was required to be a party to any transfer of jurisdiction from one highway authority to another, either as an executor of the agreement (if the transfer involved the State highway system), or as a necessary approval (for all other transfers). *Id.* § 5-2.02. As stated in section 4-409 of the Highway Code, any such transfers of jurisdiction were required to be in writing. Ill. Rev. Stat. 1977, ch. 121, ¶ 4-409; see also 605 ILCS 5/4-409 (West 2010).

¶ 12 　　In 1988, the State and the Village entered into a "Local Agency Joint Agreement" (LAJA) regarding improvements to a section of Roosevelt Road within the Village: the portion running between Finley Road and Highland Avenue. Except for the intersection of Roosevelt Road and Highland Avenue, the LAJA did not relate to the Subject Road.

¶ 13 　　The LAJA provided for: the widening and reconstruction of the designated section of Roosevelt Road; the modernization of the traffic lights at two intersections (Roosevelt and Main Street, and Roosevelt and Highland Avenue); the installation of Opticom equipment (to coordinate the passage of emergency and other priority vehicles through traffic lights); the installation of new sidewalks; and the planting of additional trees. Under the LAJA, the Village agreed to pay $44,879 toward the total cost of the project. This amount represented 100% of the cost of the sidewalks, the trees, and the Opticom equipment, and one-half of the cost of the traffic light modernization. The State would pay the remaining cost of the traffic light upgrade and 100% of the cost of the roadway work. Upon completion, the State would maintain the roadway, traffic lights, and Opticom equipment, while the Village would maintain the sidewalks, parkways, and crosswalk and stopline markings.

¶ 14 　　The LAJA included the following language:

"Article II

The [Village] Agrees:

* * *

10. Upon final field inspection of the improvement to maintain or cause to be maintained (within the [Village] limits) those portions of the improvement which are not maintained by the State including:

* * *

D. Sidewalks, parkways, crosswalk and stopline markings and [Village] owned utilities including the appurtenances thereto."

Markings next to section 10(D) of article II indicated that it had been amended per Exhibit E. Exhibit E stated:

"Article II, Item 10, Subsection D is revised to read:

D. Sidewalks (including the newly constructed sidewalks)[,] parkways, crosswalk and stopline markings and [Village] owned utilities including the appurtenances thereto.

The Village will continue to be responsible for the jurisdiction and maintenance of Main Street and Highland Avenue as well as the newly planted trees throughout the improvement."

¶ 15 In its motion for summary judgment on count I, the Village argued that the record established that the State had jurisdiction of the Subject Road upon its construction in the 1930s. In discovery responses, the State had admitted that it had no documents showing that it subsequently transferred jurisdiction directly to the Village. Further, although the State contended that it had transferred jurisdiction to the County, it could not state when that transfer occurred and admitted that it had no documents embodying such a transfer. The Village disagreed with the State's position that, before the 1975 amendment of section 4-409, an agreement to assume maintenance duties automatically included an agreement to transfer jurisdiction. The Village argued that the State had failed to provide any proof to support this assertion and called it conclusory. The Village also noted that, when the State and the Village wished to transfer jurisdiction over the southern portion of Highland Avenue in 1968, they executed a formal agreement and ordinance to that effect.

¶ 16 The County's motion for summary judgment (on counts I and III) similarly argued that the State had jurisdiction over the Subject Road beginning in the 1930s and could not show that it had ever transferred that jurisdiction. The County (unlike the Village) accepted the State's contention that maintenance agreements were used to transfer jurisdiction prior to 1975, but it pointed out that the State's acceptance of 100% of the maintenance responsibility for the Subject Road in 1971 (following the 1968-70 improvements) therefore acted as an acceptance of jurisdiction over the road. As the State could not show any later transfer of jurisdiction, jurisdiction remained with the State.

¶ 17 The State responded by conceding that it could not produce any documents showing an actual transfer of jurisdiction, but it argued that the 1970 Agreement (in which the County and the Village described the Subject Road as under County jurisdiction, and the Village agreed to undertake maintenance of it) and the LAJA (which stated that the Village would "continue to be responsible for the jurisdiction and maintenance" of the Subject Road) either showed or at least raised an inference that jurisdiction in fact had been transferred elsewhere. The State submitted the affidavit of Diane O'Keefe, IDOT's Deputy Director of Highways for Region 1. O'Keefe averred that she began working at IDOT in 1981; her job duties included "learning and enforcing many of the policies and practices" of IDOT; and "[i]t was a well established policy and practice with regard to jurisdiction" that, prior to the 1975 amendment of section 4-409 of the Highway Code, "maintenance agreements were intended to include jurisdictional responsibilities of the highway authority." The State also noted that the local and county IDOT street maps, which were last revised in 1993, showed the Subject Road as a county highway. Finally, the State argued that the Village's jurisdiction was further shown by the fact that the Village had issued dozens of permits for work "on the road" and had recently listed the Subject Road as part of its snowplowing schedule. To these last points,

the Village replied that all of the permits were for work done at properties adjacent to the Subject Road and none involved any work to the road itself, and that the snowplowing was a voluntary undertaking for safety reasons, not an agreement to assume jurisdiction.

¶ 18     On March 20, 2012, the trial court issued a memorandum opinion and order granting both of the motions for summary judgment. The trial court found that the Village and the County had demonstrated that the State had jurisdiction over the Subject Road when it was constructed, and the State had not produced evidence of any actual transfer of that jurisdiction to any other entity. The trial court noted the evidence that was produced by the State–the 1970 Agreement, the LAJA, and expenditures for snow removal–but held that at most this evidence showed that the parties had sometimes behaved as if someone other than the State had jurisdiction over the Subject Road. The trial court noted that the State admitted that it had not transferred jurisdiction directly to the Village, but it argued that it "must have transferred jurisdiction of the Subject Road to the County" sometime before 1970. Without evidence of any actual transfer of jurisdiction, however, this argument was unsupported speculation. As such speculation was not legally sufficient to avert summary judgment, the trial court found that the State had jurisdiction over the Subject Road. It therefore (1) granted the Village's motion for summary judgment on count I with respect to the State; (2) denied the motion with respect to the County; and (3) granted the County's motion for summary judgment on counts I and III.

¶ 19     The trial court denied the State's motion to reconsider on August 20, 2012. This appeal followed.

¶ 20                                    ANALYSIS

¶ 21     On appeal, the State repeats the arguments it raised before the trial court, contending that the trial court erred in granting summary judgment in favor of the Village and the County.

¶ 22     "The purpose of summary judgment is to determine whether a genuine issue of material fact exists, not to try a question of fact." *Thompson v. Gordon*, 241 Ill. 2d 428, 438 (2011). Therefore, summary judgment is proper only when the pleadings, depositions, and admissions on record, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2012); *Gaylor v. Village of Ringwood*, 363 Ill. App. 3d 543, 546 (2006).

¶ 23     Although summary judgment has been called a "drastic measure," it is an appropriate tool to employ in the expeditious disposition of a lawsuit where " 'the right of the moving party is clear and free from doubt.' " *Morris v. Margulis*, 197 Ill. 2d 28, 35 (2001) (quoting *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986)). In reviewing a trial court's grant of this relief, we do not weigh the evidence presented but, rather, determine only whether that evidence created an issue of fact. See *Jackson v. Graham*, 323 Ill. App. 3d 766, 779 (2001). We review the grant of summary judgment under the *de novo* standard (see *Morris*, 197 Ill. 2d at 35), and will reverse if we find that a genuine issue of material fact exists. However, "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999); accord *People ex rel.*

*Department of Professional Regulation v. Manos*, 326 Ill. App. 3d 698, 704 (2001) (on motion for summary judgment, mere suggestion that issue of material fact exists, without supporting evidence, is insufficient to create one); *Billman v. Frenzel Construction Co.*, 262 Ill. App. 3d 681, 687 (1993) (summary judgment proper where speculation would be necessary to prove element of cause of action alleged); *Kimbrough v. Jewel Cos.*, 92 Ill. App. 3d 813, 817-19 (1981).

¶ 24    In reviewing the evidence presented on the issue of jurisdiction over the Subject Road, we begin with the undisputed propositions that the State had jurisdiction at the time the road was constructed in the 1930s and that there is no formal documentation of any transfer of jurisdiction, either to the County or to the Village (such as the ordinance by which jurisdiction over the southern portion of Highland Avenue was transferred). This evidence raises an initial presumption that jurisdiction remains with the State. We therefore examine whether the evidence submitted by the State raised a genuine issue of material fact on this point.

¶ 25                                The 1970 Agreement

¶ 26    The State points primarily to two items of evidence that it claims raise a question of fact about whether it has jurisdiction over the Subject Road. The first is the 1970 Agreement between the County and the Village. The Agreement recited that the County had jurisdiction over the Subject Road and two other sections of road within its borders, and the Village agreed to assume maintenance duties over all three sections of road in exchange for the County performing certain repairs and making payments over a 10-year period. The State points to this Agreement as establishing two points in favor of its argument. First, the State contends that the description of the Subject Road as being under County jurisdiction was a binding admission by the County that it had such jurisdiction in 1970. Second, relying on the affidavit of Diane O'Keefe, it asserts that, prior to 1975, maintenance agreements between highway authorities implicitly transferred jurisdiction too. Thus, the State argues that in 1970 the Village assumed jurisdiction over the Subject Road by agreeing to maintain it.

¶ 27    The Village takes issue with the State's assertion that, before 1975, a maintenance agreement also transferred jurisdiction over the particular roadway that was the subject of the agreement. It argues that O'Keefe's statements about IDOT's policies and practices before 1975 are conclusory and not supported by any evidence. See *Village of Montgomery v. Aurora Township*, 387 Ill. App. 3d 353, 365 (2008) (conclusory statements lacking a factual basis are insufficient to raise an issue of material fact); *Kosten v. St. Anne's Hospital*, 132 Ill. App. 3d 1073, 1079 (1985) (same). Our own review of the affidavit suggests that some of the statements therein might fail to comply with Illinois Supreme Court Rule 191(a) (eff. July 1, 2002) in that O'Keefe was not working for IDOT in 1975, and thus does not appear to have any personal knowledge regarding the Department's practices before that point.

¶ 28    Ultimately, however, we need not resolve the question of whether, prior to 1975, a maintenance agreement such as the 1970 Agreement automatically acted to transfer jurisdiction over a roadway. That is because, in 1971, the State agreed that it would be

responsible for 100% of the maintenance of the Subject Road when it accepted the reconstruction work performed under the County's 1968 contract. Thus, even if we assume that maintenance agreements were effective to transfer jurisdiction and that the 1970 Agreement transferred to the Village jurisdiction over the Subject Road, in 1971 the State reassumed jurisdiction over that road. (Alternatively, if we do not view maintenance agreements as sufficient to transfer jurisdiction, jurisdiction always remained with the State and the 1971 approval letter simply confirmed that jurisdiction.) We therefore find that, as of 1971, the State had jurisdiction over the Subject Road.

¶ 29                                    The LAJA

¶ 30    The State next argues that the LAJA is evidence that the Village had jurisdiction over the Subject Road, because the LAJA recited that the Village would "continue to be responsible for the jurisdiction and maintenance of *** Highland Avenue." Additionally, the Village agreed to pay for part of the improvements scheduled under the LAJA, and the State argues that there would have been no need to do so if the Village did not have jurisdiction over (and the obligation to maintain) the Subject Road. The State does not contend that the LAJA itself served as a formal transfer of jurisdiction. Indeed, the LAJA provision referring to a formal transfer of jurisdiction was marked "not applicable." Rather, the State argues that the LAJA was an acknowledgment by the Village that, as of 1988, it had continuing jurisdiction over all of Highland Avenue, which included the Subject Road. (As noted, the Village agrees that it has jurisdiction over the southern portion of Highland Avenue, which was transferred to it in 1968.) We therefore examine the LAJA carefully to determine whether it raises a question regarding the jurisdiction over the Subject Road.

¶ 31    Viewing the LAJA in the light most favorable to the State, as we must (*Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004)), we conclude that the LAJA constitutes some evidence that, in 1988, the Village believed that it had responsibility of some kind over Highland Avenue, including the Subject Road. We draw this conclusion on the basis of the bare statement, in Exhibit E to the LAJA, that the Village would "continue to be responsible for the jurisdiction and maintenance of *** Highland Avenue." However, given that the subject matter of the LAJA was another road entirely (Roosevelt Road, which was undisputedly a State road), the issue of jurisdiction over the Subject Road was collateral at best to the LAJA. Accordingly, we do not believe that the statement can be viewed as a binding assertion by the Village of jurisdiction over the Subject Road. We also note that the Village's agreement to share some of the costs of the improvements under the LAJA did not show that it had jurisdiction over the Subject Road, in light of the facts that: (1) as noted, the subject matter of the LAJA was a different road entirely; (2) none of the Village's contribution went toward the actual roadwork, even where Roosevelt Road intersected the Subject Road; and (3) most of the items the Village contributed toward, such as sidewalks and parkways, were within the ordinary purview of a municipal government.

¶ 32    The difficulty with the State's reliance on the statement in the LAJA (and the other evidence it cites, such as the Village's voluntary agreement to remove snow on the Subject Road) is that it has not shown that the Village's subjective *belief* about jurisdiction is legally

equivalent to *actual* jurisdiction. Jurisdiction over a roadway is a legal right and obligation. See Manual § 5-2.01 ("Jurisdiction is the authority and obligation to administer, control, construct, maintain, and operate a highway ***."); *Village of Montgomery*, 387 Ill. App. 3d at 361. A governmental body is not permitted to exercise control over a roadway unless it has jurisdiction over that roadway. See 1979 Ill. Att'y Gen. Op. 136 (Nov. 2, 1979) (county board may enact an ordinance regulating parking on county roads, but may not regulate parking on municipal, township, or state roads). The State has not cited any legal authority for the proposition that a municipality's belief about its jurisdiction over a particular roadway (which might or might not be well-founded) is sufficient to transfer such jurisdiction. With respect to the designation of the Subject Road as a county highway on IDOT street maps, the State has not cited any authority demonstrating that its maps are binding on the issue of jurisdiction. Accordingly, we agree with the trial court: the fact that occasionally the parties behaved as if the Village or the County had jurisdiction over the Subject Road is insufficient to show that either of them actually had such jurisdiction.[2]

¶ 33    We reiterate that there is no evidence in the record showing an actual transfer of this legal right and obligation. It is undisputed that, after 1975, jurisdiction over a road could only be transferred via a written agreement specifically addressing jurisdiction, with the approval of IDOT. It is likewise undisputed that no formal documentary transfer of jurisdiction over the Subject Road appears to exist. Thus, such jurisdiction could not have been transferred to the Village or the County after 1975. Moreover, the State itself concedes that it never transferred jurisdiction directly to the Village. Rather, it suggests that jurisdiction was transferred to the County "at some point" and then further transferred to the Village. However, as we have seen, any such transfers would have to have occurred after 1971 (when the State resumed or confirmed its jurisdiction over the Subject Road) and before 1975. The State does not offer so much as a theory as to when, why, or how these transfers would have taken place. We agree with the trial court that the State's suggestion of an undocumented two-fold transfer of jurisdiction sometime between 1971 and 1975 is nothing more than speculation. Such speculation is insufficient to prevent the entry of summary judgment. *Sorce*, 309 Ill. App. 3d at 328.

¶ 34    Because the evidence shows that the State had jurisdiction over the Subject Road in 1971 and the State cannot show that jurisdiction was transferred to either the Village or the County after that point, we affirm the trial court's grant of summary judgment in favor of the Village and the County.

---

[2]In this respect, the evidence on which the State relies may be compared to the concept in real estate law of a "wild" deed, that is a deed outside the official chain of title traceable back to the original governmental grant. Such a deed does not create marketable title. *Exchange National Bank of Chicago v. Lawndale National Bank of Chicago*, 41 Ill. 2d 316, 322 (1968). Were we to accept the State's evidence as sufficient to vary the official record of jurisdiction, it could cause mischief by allowing third parties to assert jurisdiction over roadways that the State might not wish to relinquish.

¶ 35                               CONCLUSION

¶ 36          The judgment of the circuit court of Du Page County is affirmed.

¶ 37          Affirmed.